UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

LAWRENCE D. GUESSFORD, JR.,

     *Plaintiff,*

v.

PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY,

     *Defendant.*

Action No. 1:12-cv-00260-JAB-LPA

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, by and through counsel, amending his Complaint, and alleges and says as follows:

### SUMMARY

Defendant provided first-party insurance coverage to Plaintiff which required Defendant to pay damages up to $1,000,000.00 caused by a negligent underinsured motorist. Plaintiff sustained serious, life-threatening injuries in a crash caused by a negligent underinsured motorist. Plaintiff initially submitted a claim for payment to Defendant which included over $450,000 of medical bills and over 1100 pages of medical records along with a request for payment. Defendant refused to evaluate or pay Plaintiff's clearly valid claim for over 18 months, requiring Plaintiff to file a lawsuit and initiate arbitration proceedings. Defendant made its first offer on Plaintiff's claim only

1

six days before the arbitration hearing, which settlement offer ($525,000) was substantially less than Plaintiff's documented medical expenses at the time ($727,753.32). After an arbitration panel determined that Plaintiff's claim was worth $2,500,000.00, Defendant refused to pay its policy limits unless Plaintiff released Defendant from the extra-contractual claims asserted in this lawsuit.

Plaintiff seeks compensatory, trebled and punitive damages for Defendant's willful refusal to promptly evaluate and pay his first-party insurance claim. Plaintiff seeks these damages in claims for breach of contract, unfair or deceptive trade practices under N.C. Gen. Stat. § 75.1 *et seq.*, and insurance bad faith.

## STATEMENT OF FACTS

1.      That Plaintiff is a citizen and resident of Rowan County, North Carolina.

2.      That Defendant, upon information and belief, is an insurance company duly authorized and licensed to transact insurance business in the State of North Carolina with its principal office and place of business located in Harrisburg, Pennsylvania.

3.      That, on July 6, 2007, at approximately 8:08 a.m., the Plaintiff was traveling south on Highway 29 in Salisbury, Rowan County, North Carolina, in a 1994 Chevrolet vehicle which was owned by his employer, Waggoner Mfg., Inc. (hereinafter referred to as "Plaintiff's vehicle"). At all times relevant herein, Plaintiff's vehicle was insured under an automobile liability insurance policy issued by Pennsylvania National Mutual Casualty Insurance Company (hereinafter referred to as "Defendant") policy

2

number AU90074193 ("the Policy"), which policy included, as of July 6, 2007, underinsured motorist coverage (hereinafter referred to as "UIM").

4.      That, on July 6, 2007, while Plaintiff was traveling south on U.S. Highway 29 near Salisbury, Rowan County, North Carolina, a vehicle operated and owned by Rebecca Moore Corriher turned left onto Highway 29, directly in front of the Plaintiff's oncoming vehicle, causing a collision ("the crash") between said vehicles, which collision resulted in severe, life-threatening and permanently disabling bodily injuries to Plaintiff.

5.      That Rebecca Moore Corriher was operating an underinsured motor vehicle at the time her negligence caused the July 6, 2007, collision, with liability insurance coverage limits of $100,000 per person injured under a liability insurance policy issued by Nationwide Mutual Insurance Company (hereinafter referred to as "Nationwide").

6.      That Nationwide tendered its limits of liability coverage, *i.e.*, $100,000, to Plaintiff in exchange for a covenant not to enforce judgment.

7.      The value of Plaintiff's injuries and damages sustained in the crash exceeded the policy limits of all insurance policies applicable to Ms. Corriher.  Thus, Plaintiff was injured by the negligent operation of an underinsured motor vehicle.

8.      That on March 16, 2009, Plaintiff notified Defendant of Nationwide's tender of its liability limits, and on April 20, 2009, Defendant elected not to advance the liability policy limits, choosing, instead, to waive its subrogation rights against Rebecca Moore Corriher.

3

9. That the Plaintiff settled his claim against Rebecca Moore Corriher individually by accepting the full liability policy limits from Nationwide Mutual Insurance Company in the amount of $100,000 and by executing a covenant not to enforce judgment against Rebecca Moore Corriher on April 21, 2009.

10. That Plaintiff's vehicle was insured under an automobile liability insurance policy issued by Defendant, which policy included, as of July 6, 2007, UIM coverage in excess of the liability policy limits of Rebecca Moore Corriher.

11. That the personal injury damages sustained by Plaintiff were finally determined as a result of an arbitral award issued on January 31, 2011.

## COUNT I
## (BREACH OF CONTRACT)

12. That the allegations of paragraphs 1 through 11 hereinabove are re-alleged as if fully set out herein.

13. That, under the Policy, Defendant was obligated to pay damages to Plaintiff caused by the negligent operation of an underinsured motor vehicle up to $1,000,000.00 less a credit for the $100,000.00 paid by Nationwide.

14. That, because the contract between Plaintiff and Defendant was a first-party insurance contract, Defendant owed Plaintiff various contractual duties, express and implied by operation of law and by usage of trade, including but not limited to duties to:

      a. Promptly and properly investigate and evaluate Plaintiff's claim for bodily injury;

4

b.     Make reasonable settlement offers to Plaintiff based on a prompt and proper evaluation;

c.     Promptly pay Plaintiff's claim for bodily injury;

d.     Promptly pay to Plaintiff any undisputed amount due, or amount that could not reasonably be disputed, under the UIM coverage;

e.     Inform Plaintiff and his counsel of coverage available under the policy;

f.     To deal fairly with Plaintiff;

g.     Fairly construe and represent the facts and law applicable to Plaintiff's claim and the policy;

h.     Affirm or deny coverage within a reasonable time after a claim was made;

i.     Comply in all respects with North Carolina's laws on claims handling, including, but not limited to N.C. Gen. Stat. § 58-63-15; and

j.     Otherwise deal in good faith with Plaintiff as it relates to the payment of his claims.

15.     That Plaintiff, through counsel, provided sufficient documentation for Defendant to make payments or advances within the scope of the aforesaid UIM coverage.

16.     That, on or about April 16, 2009, Defendant received documentation showing that Plaintiff's workers compensation insurer had paid some $504,869.53 in medical compensation as a result of this crash.  Thus, by April 16, 2009, Defendant knew that another insurance company has satisfied itself that Plaintiff had incurred $504,869.53 in medical bills as a proximate result of the wreck.

17.     That, by correspondence dated April 20, 2009, Defendant noted that they were still investigating the matter.

18.     That on June 10, 2009, July 14, 2009 and August 7, 2009, Plaintiff wrote follow-up letters to Defendant asking that they inform Plaintiff of the status of their investigation and the results it yielded, but Defendant failed to respond to Plaintiff's correspondence.

19.     That, on or about July 14, 2009, Defendant received over 1100 pages of medical records and medical bills totaling $457,258.60 for treatment received by Plaintiff as a result of the crash.  At the same time, Defendant received a request from Plaintiff for a settlement offer.  (*See* Letter from Setzer to Condelo dated 7/14/09, attached as Exhibit A.)  The medical records sent to Defendant by July 14, 2009, detailed the life threatening and permanent injuries Plaintiff had sustained.

20.     That, by around July 14, 2009, Defendant had recognized that Plaintiff's claim was valid.

21.     That, following its receipt of the aforementioned medical records and bills and request for an offer on or about July 14, 2009, no reasonable insurance company in

6

Defendant's position would have evaluated Plaintiff's claim at an amount less than $1,000,000.00.

22.     That, following its receipt of the aforementioned medical bills and request for an offer, Defendant either (a) willfully chose not to evaluate Plaintiff's claim; or (b) unreasonably, and with reckless disregard for the consequences for Plaintiff, evaluated Plaintiff's claim having a value at or less than $100,000.00; or (c) evaluated Plaintiff's claim in excess of $100,000.00 yet willfully refused to make a settlement offer.

23.     Defendant failed to acknowledge Plaintiff's submission of medical bills and request for a settlement offer in a reasonable time following receipt of those materials on or about July 14, 2009.

24.     That by August 7, 2009, Plaintiff had sent to Defendant accident related medical expense documentation which totaled $570,673.59. This included documentation that Plaintiff's workers compensation insurer had paid some $ 513,297.02 for medical expenses proximately caused by the crash. Thus, by August 7, 2009, Defendant knew that another insurance company has satisfied itself that Plaintiff had incurred $570,673.59 in medical bills as a proximate result of the wreck.

25.     That by August 7, 2009, no reasonable insurance company in Defendant's position would have evaluated Plaintiff's claim at an amount less than $1,000,000.00.

26.     That, following its receipt of the aforementioned medical documentation, on or about August 7, 2009, Defendant either (a) willfully chose not to evaluate Plaintiff's claim; or (b) unreasonably, and with reckless disregard for the consequences

for Plaintiff, evaluated Plaintiff's claim having a value at or less than $100,000.00; or (c) evaluated Plaintiff's claim in excess of $100,000.00 yet willfully refused to make a settlement offer.

27.     That on January 29, 2010, Plaintiff provided further medical documentation to Defendant that showed that Plaintiff's workers' compensation insurer had paid medical expenses in the amount of $590,620.66 as of November 23, 2009.  Thus, by January 29, 2010, Defendant knew that another insurance company has satisfied itself that Plaintiff had incurred $590,620.66 in medical bills as a proximate result of the wreck.  On this date, Plaintiff again requested a settlement offer.

28.     That, following its receipt of the aforementioned information on or about January 29, 2010, in addition to the information and documents set out above that Defendant received before January 29, 2010, no reasonable insurance company in Defendant's position would have evaluated Plaintiff's claim at an amount less than $1,000,000.00.

29.     That, following its receipt of the aforementioned information and documents, Defendant either (a) willfully chose not to evaluate Plaintiff's claim; or (b) unreasonably, and with reckless disregard for the consequences for Plaintiff, evaluated Plaintiff's claim having a value at or less than $100,000.00; or (c) evaluated Plaintiff's claim in excess of $100,000.00 yet willfully refused to make a settlement offer.

8

30.     Defendant failed to acknowledge Plaintiff's submission of medical bills and request for a settlement offer in a reasonable time following receipt of those materials on or about January 29, 2010.

31.     That between April 20, 2009, and February 16, 2010, Defendant did not respond to Plaintiff's correspondence, nor did Defendant advise Plaintiff of the status of Defendant's alleged investigation.  On February 16, 2010, Plaintiff received a telephone call from the Defendant's representative wherein Defendant stated it would not evaluate Plaintiff's claim until Plaintiff reached maximum medical improvement. Defendant did not follow the telephone call with written confirmation so Plaintiff sent a follow-up letter to Defendant on March 1, 2010, to propose that the parties participate in a voluntary mediation in March or April of 2010.

32.     That on March 12, 2010, Defendant confirmed in writing that it was intentionally refusing to evaluate Plaintiff's claim for UIM benefits.  (*See* Letter from Condelo to Setzer dated 3/12/10, attached as Exhibit B.)  Defendant made this intentional choice despite having received over 1100 pages of medical records and bills totaling $457,258.60 on or about July 14, 2009, as well as receiving additional medical expense documentation on a number of occasions prior to March 12, 2010.

33.     As of March 12, 2010, any reasonable insurance company could only have concluded that Plaintiff's claim far exceeded the limits of coverage provided by Defendant's policy.  Nonetheless, Defendant willfully refused to evaluate Plaintiff's

9

claim based on then-available information, thereby placing Defendant's interest in holding onto its money ahead of its obligations to Plaintiff listed in paragraph 14, *supra*.

34.     That as of March 12, 2010, Defendant had been provided with the following information as to the nature and extent of Plaintiff's bodily injury claim:

a.     <u>Wage Loss</u>: Plaintiff has not worked since the date of the accident, July 6, 2007.  He earned an average weekly wage of $757.50 prior to the accident.

b.     <u>Past Medical Expenses</u>: Plaintiff had incurred medical expenses approximating $600,000.

c.     <u>Ongoing Medical Treatment</u>: The medical records, treatment notes, and rehabilitation nurse reports noted that Plaintiff's ongoing medical care includes:

i.     Prescriptions associated with Plaintiff's severe and debilitating pain and nerve damage;

ii.     Extensive physical therapy, including speech therapy and in-home health care as well as physical therapy two and three times a week for three years;

iii.     Medical appointments; and

iv.     Diagnostic testing.

d.     <u>Body Parts Permanently Affected</u>:

i. Upper Extremities: High-grade partial-thickness intrasubstance tearing of the supra- and infraspinatus muscles on the left shoulder and probable SLAP lesion; left C6 radiculopathy into left arm causing left arm pain and numbness; left brachial plexus injury.

ii. Lower Extremities: Right femur fracture with pinning and rod placement of the right femur; bilateral gait impairment; left foot drop and antalgic gait on the right; right lower extremity deep venous thrombosis with Greenfield filter placement in the interior vena cava; right knee medial meniscus tear; right hip open excision of heterotopic ossification with evacuation of hematoma on hip; bilateral peripheral neuropathy; right leg axonal sensory motor polyneuropathy.

iii. Torso: Left 6th – 9th anterior rib fractures with 7-9 fractures involving the costochondral cartilage; Left renal contusion laceration; Six surgical ventral hernia repairs; Grade I pancreatic injury, duodenal hematoma and mesenteric hematoma and transverse colon injury.

iv. Spinal Column: Multiple thoracic spinous process fractures; left C6 radiculopathy;

11

v.   Scarring: tracheostomy scar, neck scar, abdomen scar, right

arm scar, right knee scar, right hip scar.

35.   That, as of March 12, 2010, Defendant had not disclosed any of its "investigative activities."  Upon information and belief, between April 20, 2009, and March 12, 2010, Defendant had not interviewed a single witness, Defendant had not requested the Plaintiff to sign any release authorizations, and Defendant had not sought to interview Plaintiff or any of his medical providers.

36.   That prior to the initiation of arbitration proceedings, Defendant refused to evaluate Plaintiff's claim fairly and refused to make any settlement offer despite having ample information from which a reasonable person would have valued Plaintiff's claim well in excess of the policy limits.

37.   That on March 15, 2010, Plaintiff made formal demand to arbitrate the UIM claim and he offered to provide a medical release authorization so Defendant could have direct access to Plaintiff's medical information. Despite offering the medical release authorization, Defendant never acquired or asked for a medical release authorization from Plaintiff.

38.   That after Plaintiff demanded arbitration on March 15, 2010, Defendant did not designate an arbitrator until June 14, 2010.

39.   That, even though Plaintiff had initiated arbitration proceedings prior to the expiration of the statute of limitation against the tortfeasor, Rebecca Moore Corriher, and even though Defendant had waived its subrogation rights against Ms. Corriher,

12

Defendant required Plaintiff to file a civil action against Ms. Corriher in order to toll the statute of limitations against Ms. Corriher.

40. That shortly after Plaintiff filed the lawsuit against Ms. Corriher, Plaintiff was served with a set of discovery requests from Defendant on or about August 2, 2010 and on September 3, 2010 Plaintiff provided formal discovery responses even though Defendant was not entitled to discovery per the Order Staying Litigation Pending Arbitration. As of September 3, 2010, Plaintiff's accident related medical expenses, which were sent to Defendant as a part of the discovery responses, totaled $727,753.32.

41. That on November 9, 2010 Plaintiff submitted to a deposition conducted by Defendant.

42. That Defendant had an opportunity to seek an examination under oath or to obtain access to Plaintiff's medical records prior to Plaintiff's demand for arbitration on March 15, 2010 if, in fact, Defendant needed to further investigate Plaintiff's claim for personal injuries or to properly evaluate Plaintiff's claim for damages.

43. That, to the extent that the discovery requests Defendant sent to Plaintiff on August 2, 2010, and the deposition of Plaintiff on November 9, 2010, were for the purpose of investigating Plaintiff's claim, they demonstrate conclusively that Defendant did not promptly conduct a reasonable investigation of Plantiff's claim. For example, the deposition explored Plaintiff's pre-crash employment, employment history, and medical history, as well as the facts surrounding the crash. All of this information should have been inquired into within a short time after Defendant received notice of the crash or

13

notice of the Plaintiff's claim. To the extent that the deposition and written discovery were not for the purpose of investigating Plaintiff's claim, they were conducted for an improper purpose and in bad faith.

44. That despite having the accident related medical records and corresponding expenses in the amount of $457,258.60 as of July 14, 2009 and accident related medical records with corresponding total charges in the amount of $727,753.32 as of September 3, 2010, Defendants did not make any offer to settle or otherwise pay the UIM claim until January 12, 2011, just six (6) days prior to the arbitration hearing date (January 18, 2011). When Defendant extended a settlement offer of $525,000.00 on January 12, 2011, Defendant did not provide an explanation as to the offer made other than to say it was how they evaluated the case. The offer extended on January 12, 2011 was substantially less than the available UIM policy limits.

45. The UIM claim proceeded to arbitration on January, 18, 2011.

46. On January 31, 2011, the arbitration panel awarded Plaintiff $2,500,000.00.

47. Defendant's only settlement offer was substantially less than the arbitral award and was substantially less than a reasonable person would have believed himself entitled to.

48. That the evidence presented by Defendant at arbitration did not reflect any "investigative work" performed between April 20, 2009 and August 3, 2010 and the testimony offered by Defendant consisted of two lay witnesses who did not offer testimony as to the nature and extent of Plaintiff's injuries.

14

49.     That the arbitral award rendered on January 31, 2011 substantially exceeded the UIM policy limits under the coverage issued by Defendant, yet, on February 18, 2011, Defendant only tendered payment of its coverage limits conditioned upon Plaintiff executing a release of all claims including claims other than the contractual claim for UIM benefits.

50.     That Defendant's failure to promptly acknowledge, act on and respond to Plaintiff's communications, Defendant's failure to promptly and properly investigate Plaintiff's UIM claim for personal injuries between March 16, 2009 to August 2, 2010, when it submitted its first set of discovery requests to Plaintiff, Defendant's refusal to evaluate Plaintiff's claim until shortly before the arbitration hearing, Defendant's failure to explain the basis for its valuation on January 12, 2011, Defendant's failure to promptly pay amounts that could not reasonably be disputed under the UIM coverage between March 2009 and January 2011, and Defendant's attempt at a conditional tender of its policy limits after the arbitration award, constitutes a breach of Defendant's contractual duties, express and implied in law and by usage of trade, to properly investigate, evaluate and pay Plaintiff's UIM claim, including a breach of the duty of good faith, which breach occurred on or about August 15, 2009, and continued thereafter.

51.     That, as a direct, foreseeable, and proximate result of Defendant's breach of its contractual obligations as aforesaid, Plaintiff has been damaged, including but not limited to the following damages:

a.    The bodily injury damages awarded to Plaintiff as a result of the motor vehicle accident within the coverage limits of Defendant's UIM policy, less appropriate credits as allowed by law or as provided for in the contract;

b.    Expenses incurred by Plaintiff after August 15, 2009 while pursuing his claim against Defendant, through arbitration, including attorney's fees; and

c.    Interest on the aforesaid damages at the North Carolina legal rate from and after August 15, 2009, the date Defendant breached the contract.

That the aforesaid damages were within the contemplation of the parties at the time the aforesaid insurance policy was issued.

52.    That the Defendant is liable to the Plaintiff for the aforesaid damages, which exceed the sum of Ten Thousand Dollars ($10,000).

## COUNT II
## (UNFAIR AND DECEPTIVE TRADE PRACTICES)

53.    That the allegations of paragraphs 1 through 52 hereinabove are re-alleged as if fully set out herein.

54.    That Defendant is engaged in the business of insurance in the State of North Carolina.

55.    That the business of insurance is in or affecting commerce.

16

56.     That the Defendant had a duty to act in good faith when handling Plaintiff's claims under the aforesaid insurance policy.

57.     That the Defendant had a statutory duty to engage in fair settlement practices under the aforesaid insurance policy pursuant to N.C. Gen. Stat. § 58-63-15(11).

58.     That the Defendant violated its duty of good faith and its statutory duty to engage in fair settlement practices by engaging in the following acts or practices during the course of handling Plaintiff's claims:

      a.    Defendant misrepresented pertinent insurance policy provisions and the law governing those policy provision relating to the UIM coverage when, among other things, it represented that it was entitled to a credit for all funds paid by the workers compensation insurer without regard to the workers compensation lien;

      b.    Defendant failed to acknowledge and act reasonably promptly upon communications from Plaintiff with respect to his claim by, among other things, failing to respond to communications and evaluate Plaintiff's claim despite multiple requests;

      c.    Upon information and belief, Defendant failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies because reasonable standards would have required Defendant to timely investigate, evaluate and

pay Plaintiff's claim instead of delaying as set forth more fully
above;

d.      Defendant refused to pay Plaintiff's claim without conducting a
reasonable investigation based upon all available information when,
among other incidents, Defendant refused to even evaluate
Plaintiff's claim on multiple occasions when it possessed ample
information to determine that the value of Plaintiff's claim far
exceeded the policy limits;

e.      Defendant failed to act in good faith to effect prompt, fair and
equitable settlement of Plaintiff's claim after liability had become
reasonably clear, when, among other instances, it refused to evaluate
Plaintiff's claim despite knowing that an underinsured motorist
injured Plaintiff and despite having ample information to determine
that the value of Plaintiff's claim far exceeded the policy limits;

f.      To the extent that Defendant did evaluate Plaintiff's claim, it
intentionally refused to pay Plaintiff's claim or even make a prompt
and reasonable settlement offer;

g.      Defendant compelled Plaintiff to initiate arbitration and litigation
proceedings by failing to make an offer prior to initiating such
proceedings despite being provided more than sufficient information

18

by August 15, 2009 to determine that Plaintiff's damages far exceeded the UIM coverage limits;

h. Defendant compelled Plaintiff to institute litigation to recover amounts due under the UIM policy by offering substantially less than the amounts ultimately awarded in the arbitration and by refusing to agree to toll or waive the statute of limitations as to the underlying tort claim;

i. Defendant attempted to settle the claim for less than the amount to which a reasonable person would have believed they were entitled by offering $525,000 approximately a year and a half after Defendant had ample information to determine that Defendant owed Plaintiff the remaining policy limits of $900,000.00; and

j. Defendant failed to promptly provide a reasonable explanation for why it would not extend a settlement offer, for why it made the offer extended on January 12, 2011, or for why it would not make an advance on the claim.

59. That the aforesaid acts and conduct of Defendant occurred in such a manner and with such frequency as to constitute its general business practice in the handling of such claims.

60. That the aforesaid acts and conduct of Defendant constitute unfair or deceptive acts and practices in violation of N.C. Gen. Stat. § 75-1.1.

19

61.     That as a direct, foreseeable and proximate result of the aforesaid unfair and deceptive acts and practices, Plaintiff has sustained actual damages, including but not limited to the following:

        a.     The bodily injury damages awarded to Plaintiff as a result of the motor vehicle accident, less appropriate credits as allowed by law or as provided for in the contract;

        b.     Expenses incurred by Plaintiff after August 15, 2009 while pursuing his claim against Defendant, through arbitration, including attorney's fees; and

        c.     Interest on the aforesaid damages at the North Carolina legal rate from and after August 15, 2009.

The aforesaid damages exceed the sum of Ten Thousand Dollars ($10,000).

62.     That Defendant is liable to the Plaintiff for the aforesaid damages after trebling pursuant to N.C. Gen. Stat. § 75-16.

## COUNT III
## (REFUSAL TO SETTLE IN GOOD FAITH)

63.     That the allegations of paragraphs 1 through 62 hereinabove are re-alleged as if fully set out herein.

64.     Defendant refused to pay any part of Plaintiff's claim after Defendant recognized Plaintiff's valid claim.

65.     Defendant's refusal to evaluate and pay Plaintiff's claim did not amount to an honest disagreement over the value of a valid claim.

20

66.     Defendant chose not to act in good faith as follows:

a.      Defendant misrepresented pertinent insurance policy provisions and
        the law governing those policy provision relating to the UIM
        coverage when, among other things, it represented that it was
        entitled to a credit for all funds paid by the workers' compensation
        insurer without regard to the workers' compensation lien;

b.      Defendant failed to acknowledge and act reasonably promptly upon
        communications from Plaintiff with respect to his claim by, among
        other things, failing to respond to communications and evaluate
        Plaintiff's claim despite multiple requests;

c.      Upon information and belief, Defendant failed to adopt and
        implement reasonable standards for the prompt investigation of
        claims arising under insurance policies because reasonable standards
        would have required Defendant to timely investigate, evaluate and
        pay Plaintiff's claim instead of delaying as set forth more fully
        above;

d.      Defendant refused to pay Plaintiff's claim without conducting a
        reasonable investigation based upon all available information when,
        among other incidents, Defendant refused to even evaluate
        Plaintiff's claim on multiple occasions when it possessed ample

information to determine that the value of Plaintiff's claim far exceeded the policy limits;

e.   Defendant failed to act in good faith to effect prompt, fair and equitable settlement of Plaintiff's claim after liability had become reasonably clear, when, among other instances, it refused to evaluate Plaintiff's claim despite knowing that an underinsured motorist injured Plaintiff and despite having ample information to determine that the value of Plaintiff's claim far exceeded the policy limits;

f.   To the extent that Defendant did evaluate Plaintiff's claim, it intentionally refused to pay Plaintiff's claim or even make a prompt and reasonable settlement offer;

g.   Defendant compelled Plaintiff to initiate arbitration and litigation proceedings by failing to make an offer prior to initiating such proceedings despite being provided more than sufficient information by August 15, 2009 to determine that Plaintiff's damages far exceeded the UIM coverage limits;

h.   Defendant compelled Plaintiff to institute litigation to recover amounts due under the UIM policy by offering substantially less than the amounts ultimately awarded in the arbitration and by refusing to agree to toll or waive the statute of limitations as to the underlying tort claim;

i.      Defendant attempted to settle the claim for less than the amount to which a reasonable person would have believed they were entitled by offering $525,000 approximately a year and a half after Defendant had ample information to determine that Defendant owed Plaintiff the remaining policy limits of $900,000.00; and

j.      Defendant failed to promptly provide a reasonable explanation for why it would not extend a settlement offer, for why it made the offer extended on January 12, 2011, or for why it would not make an advance on the claim.

k.      Defendant conditioned payment of its obligations under the policy on Plaintiff's releasing Defendant from its extra-contractual liability.

67.      The acts alleged herein, notably:

a.      Defendant's refusal to evaluate a catastrophic claim for approximately a year and a half with no valid excuse;

b.      Defendant's misrepresentation of pertinent law regarding the limits of coverage and the entitlement to a set-off, without regard to the existence of the workers compensation lien;

c.      Defendant's conditioning of payment on the arbitration award on Plaintiff's releasing Defendant from all liability including the claims now asserted in this lawsuit; and

d.   To the extent that Defendant did evaluate Plaintiff's claim, its intentional refusal to pay Plaintiff's claim or even make a prompt and reasonable settlement offer;

constitute aggravated and outrageous conduct, a degree of negligence as indicates a reckless indifference to consequences, oppression, caprice, and/or willfulness.  These acts, as well as others alleged herein, constitute refusal to settle in good faith and proximately caused damage to Plaintiff as set forth more fully above.

68.   Under North Carolina law, an insurer who does not act in good faith is guilty of bad faith.

69.   The acts alleged herein were willful, wanton or intentionally wrongful such that punitive damages should be imposed against Defendant under N.C. Gen. Stat. § 1D-1 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, having set forth his claims herein, the Plaintiff prays the Court for the following relief:

1.   That the Plaintiff have and recover judgment against the Defendant for compensatory and punitive damages sustained, plus pre-judgment and post-judgment interest as allowed by law.

2.   That the Defendant's conduct be declared by the Court to be in violation of N.C. Gen. Stat. § 75-1.1 and that the actual damages awarded to Plaintiff and against Defendant be trebled pursuant to N.C. Gen. Stat. § 75-16.

24

3.      That the Court order Defendant to pay such punitive damages as the jury may determine are necessary to punish Defendant for its conduct and to deter Defendant and others from similar conduct in the future.

4.      That the costs of this action be taxed against the Defendant, including an award of attorney's fees to Plaintiff's counsel, pursuant to N.C. Gen. Stat. § 75-16.1.

5.      For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 18th day of June 2012.

/s/ J. David Stradley
N.C. State Bar No. 22340
/s/ Robert P. Holmes
N.C. State Bar No. 12438
Attorneys for Plaintiff
White & Stradley, PLLC
3105 Charles B. Root Wynd
Raleigh, North Carolina  27612
Telephone: (919) 844-0400
E-mail: stradley@whiteandstradley.com
E-mail: rob@whiteandstradley.com


/s/ Michael Doran
N.C. State Bar No. 10855
/s/ Kathryn C. Setzer
N.C. State Bar No. 31918
Attorneys for Plaintiff
Doran, Shelby, Pethel and Hudson, P.A.
122 North Lee Street
Salisbury, North Carolina 28144
Telephone: (704) 637-7878
E-mail: mdoran@leestreetlawyers.com
E-mail: ksetzer@leestreetlawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that I this day filed the foregoing First Amended Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Robert Tayloe Ross                     John Fonda
Diane U. Montgomery                Bailey & Thomas, P.A.
Midkiff, Muncie & Ross, P.C.       P.O. Box 52
300 Arboretum Place, Suite 420    Winston-Salem, NC  27102-0052
Richmond, VA  23236                 Phone: (336) 714-5309
Phone: (804) 560-9600               Fax: (336) 725-9206
Fax: (804) 560-5997

*Attorneys for Pennsylvania National Mutual*
*Casualty Insurance Company*


This the 18th day of June 2012.


/s/ J. David Stradley
N.C. State Bar No. 22340
Attorney for Plaintiff
White & Stradley, PLLC
3105 Charles B. Root Wynd
Raleigh, North Carolina  27612
Telephone: (919) 844-0400
E-mail: stradley@whiteandstradley.com

26