# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LAWRENCE D. GUESSFORD, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12CV260 |
| | ) | |
| PENNSYLVANIA NATIONAL | ) | |
| MUTUAL CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on Defendant Pennsylvania National Mutual Casualty Insurance Company's ("Defendant") Motion to Dismiss and/or Motion for Judgment on the Pleadings [Doc. #21] as to all claims by Plaintiff Lawrence D. Guessford, Jr.("Plaintiff"). Also before the Court is Plaintiff's Motion to Strike Defendant's Affirmative Defenses and/or Motion for Partial Judgment on the Pleadings [Doc. #28]. These Motions have been fully briefed and were argued at a Motion hearing before the Court on December 11, 2012. For the reasons discussed below, the Court will grant Defendant's Motion for Judgment on the Pleadings as to Plaintiff's breach of contract claim but deny Defendant's Motion for Judgment on the Pleadings as to Plaintiff's unfair or deceptive trade practices and refusal to settle in good faith claims. Further, the Court will grant in part and deny in part Plaintiff's Motion to Strike various affirmative defenses asserted in Defendant's Answer.

## I.  FACTUAL BACKGROUND

This case involves various claims surrounding an automobile liability insurance policy issued by Defendant to Plaintiff's employer, Waggoner Manufacturing, Inc. ("Waggoner").  The event underlying the case is a motor vehicle accident on July 6, 2007, in which Plaintiff was traveling on Highway 29 in Salisbury, North Carolina in a vehicle owned by his employer, Waggoner.  A vehicle owned and operated by Rebecca Moore Corriher ("Ms. Corriher") turned left onto Highway 29, directly in front of Plaintiff's oncoming vehicle, causing a collision between Plaintiff's vehicle and Ms. Corriher's vehicle.  This collision caused Plaintiff to suffer various injuries and required hospitalization, rehabilitation, and physical therapy.

At the time of the collision, Ms. Corriher carried a liability insurance policy issued by Nationwide Mutual Insurance Company ("Nationwide") with liability insurance coverage limits of $100,000 per person injured.  After the collision, Nationwide tendered $100,000, the limits of its liability coverage, to Plaintiff in exchange for a covenant not to enforce judgment.  Additionally, because the crash occurred while Plaintiff was in the scope of his employment, Plaintiff was entitled to workers' compensation benefits, which he received through his employer's workers' compensation insurer, the Hartford.

Though the collision occurred on July 6, 2007, Plaintiff did not discover the insurance policy issued by Defendant providing coverage for Waggoner's vehicle at the time of the collision until March of 2009.  This policy contained underinsured motorist liability ("UIM") coverage up to $1,000,000.  On March 9, 2009, Defendant sent Plaintiff correspondence acknowledging Defendant's receipt of a Claim Report concerning Plaintiff's accident and asking Plaintiff to complete a Medical/Wage Release Authorization.  On March 16, 2009, Defendant received a letter

2

from Plaintiff's counsel notifying Defendant that Nationwide, Ms. Corriher's insurer, had tendered its liability limits to Plaintiff. After receiving this notification, Defendant notified Plaintiff via a letter dated April 20, 2009 that Defendant elected not to advance Nationwide's tender, choosing instead to "waive its subrogation rights" against Ms. Corriher. (Am. Compl. ¶ 8). This correspondence also included a request to interview Plaintiff regarding the facts and circumstances surrounding the accident and a request for copies of all medical bills and records.

On July 14, 2009, Plaintiff's counsel sent Defendant a disc containing copies of Plaintiff's preliminary billing statements, medical records, and medical bills totaling $457,258.60 for treatment received by Plaintiff as a result of the crash. Plaintiff alleges that this disc contained over 1,100 pages of medical records and bills. The letter also requested that Defendant advise Plaintiff's counsel "as to Penn National's settlement position in this matter." (Am. Compl., Ex. A [Doc #18-1]).

In addition to sending Defendant the medical bills in July of 2009, beginning April 16, 2009, Plaintiff sent Defendant periodic updates detailing the amount of medical expenses that had been paid to Plaintiff by the Hartford as a proximate result of the accident. By November 23, 2009, the Hartford had paid Plaintiff's medical expenses in the amount of $590,620.66, and this information was provided to Defendant via correspondence on January 29, 2010.

On February 16, 2010, Plaintiff's counsel had a phone conversation with Defendant's representative wherein Defendant stated it would not consider evaluating Plaintiff's claim until Plaintiff reached maximum medical improvement. Following this phone conversation, on March 1, 2010, Plaintiff's counsel sent a letter to Defendant requesting mediation in March or April of 2010. On March 12, 2010, Defendant responded that the medical information received

in July of 2009 was incomplete and Plaintiff's claim could not be evaluated until Defendant received more information. Specifically, Defendant stated that Plaintiff had provided "incomplete notes regarding his care after discharge from the hospital on August 13, 2007 . . . no records from his rehab stay, incomplete office and clinic visit information up to and including July of 2008, and no records thereafter." (Am. Compl., Ex. B [Doc #18-2]). Further, the letter acknowledged that Defendant and Plaintiff discussed a potential voluntary mediation "if the Worker's Compensation carrier was in agreement and in a position to resolve their lien." (Am. Compl., Ex. B [Doc #18-2]).

On March 15, 2010, after receiving Defendant's March 12, 2010 correspondence, Plaintiff's counsel sent a letter to Defendant acknowledging that while more documents regarding the nature and extent of Plaintiff's treatment were available, such additional documentation was not necessary to fairly evaluate the extent of Plaintiff's damages. (Answer, Ex. N [Doc. #20-14]). Further, the letter requested that Defendant forward a medical release authorization for Plaintiff to sign to give Defendant direct access to Plaintiff's medical information. Finally, the letter included a formal demand for arbitration and designated Plaintiff's arbitrator.

Plaintiff alleges that even after initiating arbitration proceedings with Defendant prior to the expiration of the statute of limitations against the tort-feasor, Ms. Corriher, Defendant required Plaintiff to file a civil action against Ms. Corriher to toll the statute of limitations. Shortly after Plaintiff filed this civil tort action, Defendant served Plaintiff with a set of discovery requests and Plaintiff provided formal discovery responses on September 3, 2010.

4

Plaintiff alleges that these discovery responses contained materials detailing accident related medical expenses totaling $727,753.32.

Following the discovery requests relating to the pending tort action, an arbitration hearing between Plaintiff and Defendant under the insurance contract was set for January 18, 2011. Before arbitration, on January 12, 2011, Defendant made its first settlement offer to Plaintiff of $525,000. The offer contained no explanation of how it was calculated. Plaintiff rejected this offer and proceeded to arbitration on January 18, 2011. On January 31, 2011, the arbitration panel determined the value of Plaintiff's claim to be $2,500,000.

After the award from the arbitration panel, Defendant tendered payment of $900,000[1] to Plaintiff. This payment also contained a release for Plaintiff to sign in order to release all potential claims against Defendant. In response to this release, Plaintiff's counsel notified Defendant that the check would not be deposited until an agreement was reached allowing Plaintiff to accept the check without signing the release and without prejudice to pursuing any claims against Defendant arising out of Defendant's handling of Plaintiff's claim.

Following the $900,000 payment, Plaintiff filed this action in Superior Court in Rowan County, North Carolina, on February 14, 2012 alleging three separate counts: breach of contract, unfair and deceptive trade practices, and refusal to settle in good faith. Thereafter, Defendant removed the case based on diversity jurisdiction.[2] After removal, Defendant filed its present

---

[1]This figure encompasses Plaintiff's $1,000,000 UIM coverage limit from Defendant less the $100,000 paid to Plaintiff by Ms. Corriher's insurer, Nationwide.

[2]Plaintiff is a citizen of Rowan County and Defendant is an insurance company with its principal office and place of business in Harrisburg, Pennsylvania. Further, the amount in

5

Motion to Dismiss and/or Motion for Judgment on the Pleadings [Doc. #21]. Plaintiff then

filed his present Motion to Strike Defendant's Affirmative Defenses and/or Motion for Partial

Judgment on the Pleadings [Doc. #28].

## II.  DEFENDANT'S MOTION TO DISMISS AND/OR MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant has filed a Motion to Dismiss and/or Motion for Judgment on the Pleadings

[Doc. #21] as to each of Plaintiff's claims for breach of contract, unfair and deceptive trade

practices, and refusal to settle in good faith. Because Defendant filed its Motion

contemporaneously with its Answer, it is appropriate to address the requested relief as seeking

a judgment on the pleadings under Rule 12(c). See Burbach Broad. Co. of Delaware v. Elkins

Radio Corp., 278 F.3d 401, 405 (4th Cir. 2002) (finding that because the defendant filed his

motion to dismiss, or in the alterative, motion for judgment on the pleadings, after filing his

answer, the court would "construe the motion as one for judgment on the pleadings").

A motion for judgment on the pleadings under Rule 12(c) is governed by the same

standard as a motion to dismiss under Rule 12(b)(6). Independence News, Inc. v. City of

Charlotte, 568 F.3d 148, 154 (4th Cir. 2009). Under Rule 12(c), just as under Rule 12(b)(6), the

court "assume[s] the facts alleged in the complaint are true and draw[s] all reasonable factual

inferences in [the non-moving party's] favor." Burbach, 278 F.3d at 405. Further, the court is

tasked with determining if the complaint contains "sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129

---

controversy exceeds $75,000. Accordingly, this Court has appropriate subject matter
jurisdiction pursuant to 28 U.S.C. § 1332.

S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

However, unlike on a Rule 12(b)(6) motion, a court may consider the Answer and any

documents attached to the Answer as part of the pleadings if such documents are central to the

plaintiff's claim and the authenticity is not challenged. Mendenhall v. Hanesbrands, Inc., 856

F. Supp. 2d 717, 724 (M.D.N.C. 2012). Further, for the purposes of a Rule 12(c) motion, a

"[d]efendant cannot rely on allegations of fact contained only in the [A]nswer, including

affirmative defenses, which contradict [the] [C]omplaint because Plaintiff was not required to

reply to Defendant's [A]nswer, and all allegations in the [A]nswer are deemed denied." Id.

(internal quotations omitted). Judgment on the pleadings is only appropriate when, taking all

of the non-moving party's factual allegations as true, no genuine issues of material fact remain

and the case can be determined as a matter of law. Id.

Further, in considering Defendant's Motion for Judgment on the Pleadings, this Court,

sitting in diversity, is "obliged to apply the substantive law of the state in which it sits." Volvo

Const. Equip. North Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 599-600 (4th Cir. 2004)

(citing Erie R. Co v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); Klaxon Co.

v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941)).

Thus, the Court will apply North Carolina law in evaluating the sufficiency of each of Plaintiff's

claims pursuant to Rule 12(c).

## A. Plaintiff's Breach of Contract Claim

Under North Carolina law, the elements of a breach of contract claim are "(1) existence

of a valid contract and (2) breach of the terms of that contract." Lake Mary Ltd. P'ship v. Johnson, 145 N.C. App. 525, 536 (N.C. Ct. App. 2001) (quoting Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000)). Further, every contract carries an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement. Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985). The parties agree that there was a valid contract between Plaintiff's employer, Waggoner, and Defendant in the form of an insurance policy that provided UIM coverage to Plaintiff. However, the parties dispute whether any conduct by Defendant constituted a breach of the insurance contract.

In considering a claim for breach of an insurance policy, North Carolina courts accept "the well-settled principle that an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." Fid. Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). Accordingly, North Carolina courts recognize a duty to "construe and enforce insurance policies as written, without rewriting the contract or disregarding the express language used." Id.

Plaintiff alleges in his Complaint that Defendant owed Plaintiff "various contractual duties, express and implied by operation of law and usage of trade." (Am. Compl. ¶ 14). Plaintiff enumerates these duties in his Complaint to include a duty to promptly and properly investigate Plaintiff's claim for bodily injury, make reasonable settlement offers to Plaintiff, promptly pay Plaintiff's claim for bodily injury, promptly pay any undisputed amount due under the UIM coverage, inform Plaintiff and his counsel of coverage available under the policy, deal

8

fairly with Plaintiff, fairly construe the facts and law applicable to Plaintiff's claim and the policy, affirm or deny coverage within a reasonable time after the claim was made, comply in all respects with North Carolina's laws on claim handling, including, but not limited to, North Carolina General Statute § 58-63-15, and otherwise deal in good faith with Plaintiff as it relates to the payment of his claims. (Am. Compl. ¶ 14).

To support a breach of these alleged contractual duties, Plaintiff alleges that he provided Defendant with ample medical information and documentation to evaluate his UIM claim and Defendant either willfully chose not to evaluate the claim, unreasonably evaluated the claim as having a value at or less than $1,000,000, or evaluated the claim in excess of $1,000,000 yet willfully refused to make a reasonable a settlement offer. (Am. Compl. ¶ 22). The crux of Plaintiff's breach of contract claim, therefore, is that Defendant did not investigate Plaintiff's claim or make any reasonable settlement offer to Plaintiff despite having sufficient information to formulate a reasonable offer, thereby forcing Plaintiff to demand arbitration in order to resolve the claim.

Because the provisions of the insurance policy govern the duties of the parties in North Carolina, a consideration of a breach of contract claim must begin with an inquiry into the language of the policy itself. The insurance contract at issue states that Defendant will "pay all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of . . . an uninsured motor vehicle[3] because of bodily injury sustained by the insured and

---

[3]The insurance policy defines an "uninsured motor vehicle" to include an "underinsured motor vehicle," so this policy provision applies equally to UIM coverage. (Insurance Contract, Ex. I [Doc. #20-9], at 34).

9

caused by an accident." (Insurance Contract, Ex. I [Doc. #20-9], at 31) (internal quotations omitted). With respect to the damages Plaintiff is "legally entitled to recover," the contract further provides that in the event that the insurer and an insured "do not agree as to the amount of damages that are recoverable by that insured, then the matter may be arbitrated." (Insurance Contract, Ex. I [Doc. #20-9], at 34). Further, the contract requires that after the insured makes a written demand for arbitration, each party will "pay the expenses it incurs" in the arbitration process. (Insurance Contract, Ex. I [Doc. #20-9], at 34). Finally, the contract notes that if the insured elects not to arbitrate, Defendant's liability "will be determined only in an action against [Defendant]." (Insurance Contract, Ex. I [Doc. #20-9], at 34).

Based on the language of the insurance contract, particularly those provisions noted above, which set forth the procedures for resolving a dispute over the value of a claim, Plaintiff has failed to allege sufficient facts that Defendant breached any specific provision of the contract. Indeed, federal district courts in North Carolina have rejected similar breach of contract claims. See Chew v. Progressive Universal Ins. Co., 2010 WL 4338352 (E.D.N.C. Oct. 25, 2010); Lemons v. Pennsylvania Nat. Mut. Cas. Ins. Co., 2011 WL 2565617 (M.D.N.C. June 28, 2011); Bendrick v. State Farm Mut. Auto. Ins. Co., 2012 WL 1247158 (W.D.N.C. Mar. 7, 2012). In Chew, an insured plaintiff brought a claim against its insurance company for breach of contract, unfair and deceptive trade practices, and breach of covenant of good faith and fair dealing based on the insurance company's failure to reasonably settle with the plaintiff under his uninsured motorist coverage, thereby forcing the plaintiff to hire an attorney and arbitrate his claim. Chew, 2010 WL 4338352, at *7. The court granted summary judgment in favor of

10

the defendant insurer, finding that the defendant did not breach the terms of the policy because "the policy explicitly provide[d] that an insured party may request arbitration in the event of a disagreement as to the amount of damages owed." Id. at *8. Thus, "[f]ar from burdening plaintiff, the arbitration provision appear[ed] to allow plaintiff to choose arbitration as a less costly alternative to a tort suit against the uninsured motorist." Id.

The Lemons and Bendrick courts found the reasoning from Chew to be persuasive, with both courts dismissing insured plaintiffs' breach of contract claims under Rule 12(b)(6). In Lemons, the insured plaintiff demanded arbitration under his insurance policy after rejecting a series of settlement offers from the defendant insurer. Lemons, 2011 WL 2565617, at *1. The final arbitration award was $80,000 higher than the highest of the defendant insurer's settlement offers. Id. In dismissing the plaintiff's breach of contract claim, the court highlighted policy reasons, noting that "[a]llowing insureds to file lawsuits for breach of contract whenever the parties disagree over the amount of an insurer's claim would vitiate the entire purpose of the arbitration clauses in insurance policies." Lemons, 2011 WL 2565617, at *3. Instead of recognizing a breach of contract, the court stressed that the "process of arbitration is intended to allow an impartial arbiter to determine the value of an insured's claim when the parties reasonably disagree over the value." Id.

Similarly, in Bendrick, the defendant insurer made no settlement offer to the insured plaintiff following the plaintiff's demand for the policy limits of her UIM coverage. Bendrick, 2012 WL 1247158, at *2. After conducting an investigation, the defendant declined to accept or counter the plaintiff's demand for the policy limits. Id. at *1. The plaintiff then demanded

11

arbitration pursuant to her policy, and the defendant promptly paid the plaintiff the coverage value determined at arbitration.  Id.  In dismissing the plaintiff's breach of contract claim, the Bendrick court noted that the plaintiff had "fail[ed] to specifically identify any term of the parties' contract that was breached."  Id. at *2.  Further, the court found that the plaintiff's allegations that she was forced to demand arbitration and that the defendant requested but did not require she sign a release upon acceptance of the arbitration award were not "adequately pled facts to support a plausible claim for breach of contract."  Id. at *2, *4.

Plaintiff argues that Chew, Lemons, and Bendrick can be distinguished from Plaintiff's case because they involved honest disagreements over the value of coverage due under the insurance policies at issue and the investigative actions taken by the defendant insurers in those cases involved more diligence than the actions of Defendant here.  To support these distinctions, Plaintiff stresses that Defendant willfully failed to investigate Plaintiff's claim even after recognizing the claim as valid.  (Am. Compl. ¶ 20, 22).  However, allegations of Defendant's aggravated conduct in handling Plaintiff's claim do not speak to a breach of the contract itself, but rather sound in tort.  Despite any alleged tortious conduct by Defendant in the handling of Plaintiff's insurance claim, when considering a breach of contract claim, this Court is bound to "construe and enforce insurance policies as written."  Fid. Bankers Life Ins. Co., 318 N.C. at 381, 348 S.E.2d at 796.

Notably, in the present case, Plaintiff's Complaint fails to identify any specific provision of the insurance contract that was breached by Defendant's conduct.  For example, although Plaintiff alleges that the medical documentation given to Defendant provided Defendant with

12

sufficient information to make a settlement offer prior to arbitration, Plaintiff points to no provision in the contract requiring Defendant to make such a settlement offer. Instead, the contract specifies that in the event of a dispute regarding value, Plaintiff may choose to institute arbitration proceedings, or else Defendant's liability will be determined "only in an action against [Defendant]." (Insurance Contract, Ex. I [Doc. #20-9], at 34).

After ongoing correspondence with Defendant failed to produce a settlement offer, Plaintiff chose to initiate arbitration proceedings, thereby availing himself of the very procedures provided under the contract in the event of a disagreement over the value of a claim. Defendant complied with these same procedures and upon the issuance of the arbitration decision, Defendant promptly sent Plaintiff a check for $900,000, the full liability limits under the policy. To the extent that Plaintiff alleges Defendant's conduct throughout the claim process constitutes a breach of contract, these allegations do not support a breach of any provision or requirement of the contract itself, but instead speak to Defendant's potential tort liability in its handling of Plaintiff's claim. Thus, taking all of Plaintiff's factual allegations pertaining to his breach of contract claim as true, Plaintiff's Complaint does not state a plausible claim for breach of contract. Accordingly, Defendant's Motion for Judgment on the Pleadings will be granted as to Plaintiff's claim for breach of contract.

### B. Plaintiff's Unfair and Deceptive Trade Practices Act Claim

In addition to his breach of contract claim, Plaintiff also asserts that Defendant's actions constituted unfair and deceptive trade practices in violation of North Carolina's Unfair or

Deceptive Trade Practices Act, N.C. General Statute § 75-1.1. North Carolina courts have recognized that "[c]auses of action for unfair or deceptive practices are distinct from breach of contract actions." Nelson v. Hartford Underwriters Ins. Co., 177 N.C. App. 595, 609, 630 S.E.2d 221, 231 (N.C. Ct. App. 2006). Indeed, "[a]n action for unfair or deceptive practices is a creation of statue, and therefore *sui generis*, so the cause of action exists independently, regardless of whether a contract was breached." Id. Thus, Plaintiff's failure to allege plausible facts to survive a Motion for Judgment on the Pleadings as to his breach of contract claim does not preclude a potential claim for violations of North Carolina's Unfair or Deceptive Trade Practices Act.[4]

To establish a claim under North Carolina's Unfair or Deceptive Trade Practices Act ("UDTPA"), N.C. General Statute § 75-1.1, a plaintiff must show "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Gray v. North Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (N.C. 2000). The North Carolina Supreme Court has noted that when an insurance company engages

---

[4]In Robinson v. North Carolina Farm Bureau Insurance Company, 86 N.C. App. 44, 356 S.E.2d 392 (N.C. Ct. App. 1987), the North Carolina Court of Appeals overturned a grant of summary judgment in favor of the defendant insurer regarding the insured plaintiff's allegations of bad faith tortious conduct. The defendant insurer had delayed paying the full amount of coverage after a building fire but paid the full amount of damages under the contract after an umpire and appraisers reviewed the claim. Id. at 45, 356 S.E.2d at 393. In reversing the grant of summary judgment in favor of the defendant insurer, the court noted that it "[found] nothing in the case law which *requires* that the tortious conduct be accompanied by a breach of the contract, even though most, if not all, of the cases have as a factual background the insurance company's refusal to pay." Id. at 50-51, 356 S.E.2d at 395. Thus, the court recognized that it "[did] not believe an action for punitive damages from tortious conduct is precluded when the company eventually pays, if bad faith delay and aggravating conduct is present." Id. at 50, 356 S.E.2d at 395.

14

in a practice or act constituting an unfair claim settlement practice under N.C. General Statute § 58-63-15(11) ("Section 58-63-15(11)"), it "also engages in conduct that embodies the broader standards of N.C.G.S. § 75-1.1 because such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." Id. at 71, 529 S.E.2d at 683. Section 58-63-15(11) was "designed to protect the consuming public." Id. at 70, 529 S.E.2d at 682. This protection is accomplished through the enumeration of "insurance specific" unfair or deceptive trade acts or practices within Section 58-63-15(11). Lenoir Mall, LLC v. State Farm Fire and Cas. Co., 2011 WL 3682794, at *3 (W.D.N.C. Aug. 23, 2011). Thus, North Carolina courts have recognized that a violation of any unfair claim settlement practice recognized within Section 58-63-15(11) constitutes an unfair or deceptive act or practice under N.C. General Statute § 75-1.1 as a matter of law. Gray, 352 N.C. at 71, 529 S.E.2d at 683.

Plaintiff alleges in his Complaint multiple violations specifically enumerated in Section 58-63-15(11), including allegations that Defendant misrepresented pertinent insurance policy provisions regarding Plaintiff's workers' compensation payments, failed to acknowledge and act promptly upon communications from Plaintiff, failed to adopt and implement reasonable standards to promptly investigate claims, refused to pay Plaintiff's claim without conducting a reasonable investigation, failed to act in good faith to effect a prompt, fair, and equitable settlement of Plaintiff's claim after liability became reasonably clear, compelled Plaintiff to initiate arbitration proceedings by failing to make any settlement offers before the demand, attempted to settle the claim for less than a reasonable person would have believed he was entitled by offering $525,000, and failed to promptly provide a reasonable explanation for why

15

it would not extend a settlement offer and why the one offer it did extend was only $525,000. (Am. Compl. ¶ 58). Each of these allegations implicates protections provided within Section 58-63-15(11) for a consumer from an insurer's unfair or deceptive acts or practices. See Kielbania v. Indian Harbor Ins. Co., 2012 WL 3957926, at *10 (M.D.N.C. Sept. 10, 2012) (noting that "Section 58-63-15 . . . defines unfair methods of competition and unfair or deceptive acts or practices in the insurance industry" and "[e]numerated within this section is a list of unfair claim settlement practices").

For the purposes of a Rule 12(c) motion, taking Plaintiff's factual allegations as true, the Court finds that Plaintiff has pled sufficient facts to plausibly state a UDTPA claim. For example, Plaintiff alleges that Defendant misrepresented pertinent insurance policy provisions and the law governing those provisions with regard to Defendant's entitlement to a credit for funds paid by Plaintiff's workers' compensation insurer. An exhibit attached to Plaintiff's Complaint, which can be considered for the purposes of a Rule 12(c) motion, reveals correspondence between Plaintiff and Defendant in which Defendant noted a voluntary mediation could be set only "if the Worker's Compensation carrier was in agreement and in a position to resolve their lien." (Am. Compl., Ex. B [Doc. #18-2]). Making mediation contingent on the participation of Plaintiff's workers' compensation insurer is not a requirement under the insurance contract between the parties. Accordingly, Plaintiff has alleged sufficient facts, supported by attached documents, that Defendant misrepresented policy provisions and the law governing those provisions in violation of Section 58-63-15(11)(a).

Further, Plaintiff alleges that Defendant provided no information to explain its lone

16

settlement offer of $525,000 prior to arbitration. This factual allegation, taken as true, plausibly states a violation of Section 58-63-15(11)(n) for failing to provide a reasonable explanation of the basis for a compromise settlement offer. Additionally, exhibits attached to Defendant's Answer reveal correspondence updating Defendant as to the total accident-related medical expenses paid by Plaintiff's workers' compensation carrier, which totaled $590,620.66 by November 23, 2009. Further, Plaintiff alleges that by September 3, 2010, Defendant had information regarding Plaintiff's accident-related medical expenses totaling $727,753.32. Thus, Plaintiff has alleged sufficient facts, supported by attached correspondence, to state a plausible claim that Defendant attempted to settle Plaintiff's claim for less than the amount which a reasonable person would have believed they were entitled by offering $525,000, despite having timely information that Plaintiff's medical expenses exceeded the amount being offered by Defendant in violation of Section 58-63-15(11)(h).

In addition to the violations of the three specific settlement claim practices detailed above, the factual allegations in Plaintiff's Complaint could plausibly correspond to five other unfair claim settlement practices enumerated in Section 58-63-15(11), including that Defendant failed to respond to multiple communications and requests for settlement offers in violation of Section 58-63-15(11)(b), that Defendant failed to adopt and implement reasonable standards for the investigation of claims, did not conduct a reasonable investigation of Plaintiff's claims, and did not attempt in good faith to effectuate a prompt settlement in violation of Section 58-63-15(11)(c), (d), and (f), and that Defendant compelled Plaintiff to initiate arbitration and litigation proceedings by failing to make a settlement offer despite having sufficient information in

17

violation of Section 58-63-15(11)(g). (Am. Compl. ¶ 58). Because a violation of Section 58-63-15(11) constitutes an unfair or deceptive act or practice under N.C. General Statute § 75-1.1 as a matter of law, Plaintiff has alleged sufficient facts to state a plausible UDTPA claim.

Defendant argues that Chew, Lemons, and Bendrick indicate that Plaintiff's allegations are not sufficient to state a plausible UDTPA claim. However, the facts alleged in Plaintiff's Complaint involve aggravated conduct and bad faith delay not present in the facts alleged in Lemons and Bendrick, both of which were decided at the motion to dismiss stage. For example, in Lemons, the plaintiff, in support of his UDTPA claim, alleged only that the insurer offered less than a reasonable person would believe he was entitled and compelled the plaintiff to institute arbitration. Lemons, 2011 WL 2565617, at *4. In dismissing the plaintiff's UDTPA claim, the court found the fact that the arbitrator awarded more than the amount tendered by the insurer did not "*ipso facto* mean that [the insurer] engaged in unfair and deceptive trade practices or unfair claim settlement practices." Id. Instead, the court recognized that the "value of an insured's claim under an insurance policy is not an exact science." Id.

Similarly, in Bendrick, in support of his UDTPA claim, the plaintiff alleged only that the defendant insurer did not make any settlement offer prior to binding arbitration and submitted a release of claims to the plaintiff with the arbitration award. Bendrick, 2012 WL 1247158, at *4. The court found that these allegations alone did not include any "bad faith delay and aggravating conduct . . . necessary to establish a plausible UDTPA claim." Id. at *5. The court noted that the basic facts of the case showed that the parties "disagreed on the amount Plaintiff was entitled to recover . . . and then pursuant to terms of the policy they executed, they engaged

18

in arbitration to resolve their disagreement." Id. Because the plaintiff had alleged no additional facts in support of his bad faith claim, dismissal was warranted. Id.

Here, Plaintiff's Complaint contains factual allegations in support of his UDTPA claim beyond those alleged in both Lemons and Bendrick. While Plaintiff's Complaint alleges some facts similar to those alleged by the plaintiffs in Lemons and Bendrick, such as the disparity between the arbitration award and settlement offer and the inclusion of a release with the arbitration payment, Plaintiff's Complaint also includes allegations of additional aggravated conduct. For example, Plaintiff alleges that Defendant failed to properly investigate Plaintiff's claim, failed to provide reasonable explanation for its settlement procedures and the single settlement offer that was made, misrepresented pertinent facts or insurance policy provisions, and failed to act in good faith to effect prompt, fair, and equitable settlement of Plaintiff's claim after liability had become reasonably clear. Hence, as Plaintiff's Complaint contains allegations of aggravated conduct and bad faith delay not present in the allegations made by the plaintiffs in Lemons and Bendrick, these cases do not preclude Plaintiff's UDTPA claim.

Based on the foregoing, the Court concludes that the facts alleged by Plaintiff in his Complaint along with Defendant's Answer and attached documents indicate that Plaintiff's allegations, taken as true for the purposes of a Rule 12(c) motion, are sufficient to state a plausible UDTPA claim. Accordingly, Defendant's Motion for Judgment on the Pleadings will be denied as to Plaintiff's claim for unfair and deceptive trade practices.

### C. Plaintiff's Refusal to Settle in Good Faith Claim

In addition to Plaintiff's claims for breach of contract and unfair and deceptive trade

19

practices, Plaintiff also asserts a claim for punitive damages for refusal to settle in good faith.[5]

In order to recover punitive damages for the tort of an insurance company's bad faith refusal

to settle, a plaintiff must prove: (1) a refusal to pay after recognition of a valid claim; (2) bad

faith; and (3) aggravating or outrageous conduct. Lovell v. Nationwide Mut. Ins. Co., 108 N.C.

App. 416, 420, 424 S.E.2d 181, 184, aff'd, 334 N.C. 682, 435 S.E.2d 71 (1993). In this context,

bad faith means "not based on honest disagreement or innocent mistake." Id. at 421, 424 S.E.2d

at 185. Plaintiff alleges in his Complaint that "by around July 14, 2009, Defendant had

recognized that Plaintiff's claim was valid." (Am. Compl. ¶ 20). Despite this alleged recognition,

the Complaint states that Defendant continued to either not evaluate Plaintiff's claim or willfully

refused to make a settlement offer after being made aware of the nature of Plaintiff's claim.

Further, Plaintiff alleges that this refusal was not based on an honest disagreement over the

value of Plaintiff's claim that was resolved through the arbitration proceeding, but was instead

based on many of the allegations previously discussed with regard to the UDTPA claim,

including a willful failure to investigate Plaintiff's claim and provide any reasonable settlement

offer in light of the medical bills and information provided to Defendant by Plaintiff. These

alleged facts, taken as true, state a claim for relief as to the first two elements necessary for the

tort of an insurance company's bad faith refusal to settle, that is, refusal to pay after recognition

of a valid claim and bad faith.

---

[5]While Plaintiff labels its third claim as "Refusal to Settle in Good Faith," a tort claim of
this sort is more appropriately referred to under North Carolina law as an insurance company's
"Bad Faith Refusal to Settle." As such, these classifications will be used interchangeably
throughout this Section in reference to Plaintiff's third claim.

The third element, aggravating or outrageous conduct, may be shown by "fraud, malice, gross negligence, insult, rudeness, oppression, or wanton and reckless disregard of plaintiff's rights." Lovell, 108 N.C. App. at 422, 424 S.E.2d at 185. North Carolina courts have recognized that "[a] low settlement offer in violation of N.C. General Statute § 58-63-15(11)(h) is also a factor contributing to aggravated conduct." Kielbania, 2012 WL 3957926, at *12 (citing Smith v. Nationwide Mut. Fire Ins. Co., 96 N.C. App. 215, 218, 385 S.E.2d 152, 154 (1989)). Here, Plaintiff cites to Defendant's settlement offer of $525,000 to support a finding of aggravated conduct, particularly in view of the fact that it was at the time substantially lower than Plaintiff's documented medical expenses. Further, Plaintiff alleges that Defendant's refusal to evaluate Plaintiff's claim for a year and a half with no valid excuse, Defendant's conditioning of payment of the arbitration award on Plaintiff releasing Defendant from all liability, and Defendant's intentional refusal to pay Plaintiff or make a prompt and reasonable settlement offer all constitute aggravated and outrageous conduct. These allegations are supported by facts previously discussed with regard to Plaintiff's UDTPA claim, including that Plaintiff provided Defendant with sufficient information to evaluate the claim by August 15, 2009, and that Defendant compelled Plaintiff to institute litigation and arbitration proceedings despite being provided with this medical information. (Am. Compl. ¶ 66, 67). Based on the facts set out in this Section and discussed in more detail with regard to Plaintiff's UDTPA claim, the Court finds that Plaintiff has alleged sufficient facts to state a claim for relief as to all three elements necessary for the tort of an insurance company's bad faith refusal to settle. Accordingly, Defendant's Motion for Judgment on the Pleadings will be denied as to Plaintiff's claim for

21

refusal to settle in good faith.[6]

## III. PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES AND/OR MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Defendant's Answer contains a total of sixteen affirmative defenses. In response to Defendant's Answer, Plaintiff filed a Motion to Strike Defendant's Affirmative Defenses and/or Motion for Judgment on the Pleadings, arguing specific affirmative defenses should be stricken either as legally insufficient or factually insufficient based on the pleadings. Further, Plaintiff seeks Judgment on the Pleadings as to Defendant's specific affirmative defenses labeled by Plaintiff as "Contract Defenses." Although Plaintiff moves under both Rule 12(c) and Rule 12(f) of the Federal Rules of Civil Procedure, Plaintiff's Motion is most properly treated as a Motion to Strike under Rule 12(f) and will be treated as such by this Court.[7]

Pursuant to Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). When reviewing a motion to strike, a court must view the pleading under attack in a light most favorable to the pleader. Racick v. Dominion Law Assocs., 270 F.R.D. 228, 232 (E.D.N.C.

---

[6]While the Court recognizes that Plaintiff could not recover both statutory damages under its UDTPA claim and punitive damages under its refusal to settle in good faith claim, "any ultimate election of remedies would be matters for trial." Kielbania, 2012 WL 3957926, at *12.

[7]A motion for judgment on the pleadings is more appropriately resolved where "'all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.'" Bradshaw v. Hilco Receivables, LLC, 725 F. Supp. 2d 532, 534 (D. Md. 2010) (quoting 5C Wright & Miller, Federal Practice and Procedure § 1367, at 208 (3d ed. 2004)). "On the other hand, a Rule 12(f) motion to strike is more fitting for situations, such as the one at bar, where a plaintiff challenges only some of the defenses raised in a defendant's pleading." Id. (citing 5C Wright & Miller, Federal Practice and Procedure § 1369, at 260 (3d ed. 2004)).

2010). A defense will be insufficient if it is clearly invalid as a matter of law. Id. The Fourth Circuit has recognized that Rule 12(f) motions are generally viewed with disfavor because "'striking a portion of a pleading is a drastic remedy.'" Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (2d ed. 1990)).

In pleading an affirmative defense, Federal Rule of Civil Procedure 8(c), which specifically governs affirmative defenses, requires a party to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). The Fourth Circuit has recognized that "[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense" Clem v. Corbeau, 98 F. App'x 197, 204 (4th Cir. 2004) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1274, at 455-56 (2d ed. 1990)). Plaintiff argues that this court should apply a heightened "plausibility" standard to the pleading of affirmative defenses after the Supreme Court decisions of Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). However, the Fourth Circuit has not directly addressed the implications Iqbal and Twombly on the pleading of affirmative defenses. As such, the Court will follow the language of the Federal Rules of Civil Procedure and the Fourth Circuit's present interpretation of that language, which requires only that a party "affirmatively state any avoidance or affirmative defense" in order to provide fair notice to a plaintiff of the nature of the affirmative defense. See Fed. R. Civ. P. 8(c); Clem, 98 F. App'x at 204.

With this standard in mind, the Court will address each challenged affirmative defense. Plaintiff's Motion to Strike challenges the following affirmative defenses as being legally or factually insufficient: (2) Arbitration and Award; (3) Unclean Hands; (9) Accord and Satisfaction; (10) Statute of Limitations; (11) Failure to Mitigate Damages; (12) Laches; and (16) Advice of Counsel. Further, Plaintiff's Motion for Judgment on the Pleadings, which this Court will treat as a Motion to Strike, moves to strike the following affirmative defenses: (13) Failure to Cooperate and (14) Contract Defenses.

As a threshold matter, the Court notes that within the briefing addressing Plaintiff's Motion to Strike, Defendant has agreed not to pursue the following affirmative defenses: (10) Statute of Limitations and (12) Laches. Accordingly, the Court will strike these two affirmative defenses as moot. Further, because this Court will grant Judgment on the Pleadings in favor of Defendant as to Plaintiff's breach of contract claim, the Court will strike the following affirmative defenses as moot because the defenses were only asserted against Plaintiff's breach of contract claim: (9) Accord and Satisfaction and (14) Contract Defenses. To the extent that Defendant asserted the remaining affirmative defenses against all three of Plaintiff's claims, the Court will only address each challenged defense as to Plaintiff's two remaining claims: unfair and deceptive trade practices and failure to settle in good faith.

**A. Second Affirmative Defense of Arbitration and Award**

The defense of arbitration and award "requires dismissal of claims that were previously the subject of arbitrations that result in a decision or award." W. Maryland Wireless Connection v. Zini, 601 F.Supp.2d 634, 644 (D. Md. 2009). Because Plaintiff's claims for unfair and

24

deceptive trade practices and failure to settle in good faith were not the subject of the arbitration between the parties, the Court will grant Plaintiff's Motion and will strike the affirmative defense of arbitration and award as legally insufficient as to Plaintiff's remaining claims. See Abdella v. U.S. Fid. & Guar. Co., 711 N.E.2d 182, 185 (Mass. App. Ct. 1999) (finding that an arbitrator for a UIM insurance claim had authority only to determine the value of coverage the plaintiff was entitled to under his UIM policy and thus the plaintiff's claims for bad faith and unfair and deceptive trade practices were not precluded by the arbitration award).

## B. Third Affirmative Defense of Unclean Hands

Under North Carolina law, the "defense of unclean hands is only applicable when the plaintiff seeks an equitable remedy." Food Lion, Inc. v. Capital Cities/ABC, Inc., 951 F.Supp. 1233, 1234 (M.D.N.C. 1996). See also Sweeney v. Marc Global, Inc., 2008 WL 313618 (W.D.N.C. Feb.4, 2008) (finding the defense of unclean hands was not available to a defendant where the plaintiff brought an action for damages and did not seek equitable relief). In Food Lion, the court rejected the defendant's argument that the merger of law and equity made the defense of unclean hands applicable even in the absence of equitable claims, and instead found the doctrine of unclean hands is not applicable where a plaintiff is not seeking an equitable remedy against a defendant. Food Lion, 951 F.Supp. at 1234 (citing Nat'l Mortg. Corp. v. Am. Title Ins. Co., 41 N.C. App. 613, 255 S.E.2d 622 (1979), rev'd on other grounds, 299 N.C. 369, 261 S.E.2d 844 (1980)). Because the plaintiff in Food Lion had withdrawn all equitable claims, the defendant could not rely on the defense of unclean hands as a matter of law. Food Lion, 951 F.Supp. at 1235.

25

Defendant alleges that it asserted the affirmative defense of unclean hands simply to "preserve Penn National's right to assert such actions that Plaintiff took which caused or contributed to any portion of his damages." (Def's Mem. in Opp'n to Pl.'s Mot. to Strike [Doc. #34], at 16). However, any potential actions taken by Plaintiff that negate Plaintiff's legal claims or potential damages are not properly addressed through the affirmative defense of unclean hands because Plaintiff has demanded no equitable relief. Instead, Plaintiff's two remaining claims demand monetary relief in the form of treble and punitive damages, respectively. (Am. Compl. ¶¶ 61-62, 69). Accordingly, the Court will grant Plaintiff's Motion and will strike the affirmative defense of unclean hands as legally insufficient as to Plaintiff's remaining claims.[8]

### C. Eleventh Affirmative Defense of Failure to Mitigate Damages

North Carolina recognizes a failure to mitigate damages as a valid affirmative defense. See Elm St. Gallery, Inc. v. Williams, 191 N.C. App. 760, 762, 663 S.E.2d 874, 875 (N.C. Ct. App. 2008). The purpose of asserting the affirmative defense of failure to mitigate damages is to introduce "facts which show that the plaintiff's . . . cause of action does not entitle him to so large an amount as the showing on his side would otherwise justify the jury in allowing him." Scott v. Foppe, 247 N.C. 67, 71, 100 S.E.2d 238, 240-41 (1957) (citing 1 Sutherland, Damages, 4th ed., § 149). Because Plaintiff's two remaining claims seek treble and punitive damages,

---

[8]Plaintiff's Motion to Strike further requests that the Court strike Defendant's affirmative defense of contributory negligence. This defense is not explicitly enumerated in Defendant's Answer, but Plaintiff argues Defendant attempts to disguise its contributory negligence defense under the rubric of "Unclean Hands." However, because the defense is not specifically alleged by Defendant and, because the Court will strike the defense of unclean hands, Plaintiff's request is moot.

26

respectively, Defendant can assert the affirmative defense of a failure to mitigate damages in an effort to reduce any potential damage award granted to Plaintiff. Accordingly, because Plaintiff has been provided fair notice that Defendant may assert the defense of a failure to mitigate damages, the Court will deny Plaintiff's Motion to Strike the affirmative defense of failure to mitigate damages.

### D. Thirteenth Affirmative Defense of Failure to Cooperate

"Failure to cooperate under an insurance policy is an affirmative defense upon which [the insurer] has the burden of proof." <u>Lockwood v. Porter</u>, 98 N.C. App. 410, 411, 390 S.E.2d 742, 743 (N.C. Ct. App. 1990). While Defendant's Answer does not expressly indicate that the affirmative defense of failure to cooperate is limited to Plaintiff's breach of contract claim, the duty of an insured party to cooperate derives from provisions of the insurance contract itself. Since the Court will grant Judgment on the Pleadings in favor of Defendant as to Plaintiff's breach of contract claim, the Court will grant Plaintiff's Motion and strike the affirmative defense of failure to cooperate as moot. <u>See</u> <u>Greco v. Penn Nat. Sec. Ins. Co.</u>, 721 S.E.2d 280 (N.C. Ct. App. 2012) (discussing failure to cooperate under an insurance policy as an affirmative defense).

### E. Sixteenth Affirmative Defense of Advice of Counsel

North Carolina courts have held that "reliance on the advice of counsel is a factor that may be considered by a jury in assessing the reasonableness of a defendant's conduct in regard to punitive damages, but it is not a complete defense." <u>Miller v. Brooks</u>, 123 N.C. App. 20, 31, 472 S.E.2d 350, 357 (N.C. Ct. App. 1996). Because Plaintiff's third claim for refusal to settle

in good faith seeks punitive damages and Plaintiff has been provided fair notice that Defendant may use this affirmative defense to refute Plaintiff's allegations of bad faith, the Court will deny Plaintiff's Motion to Strike the affirmative defense of advice of counsel as to Plaintiff's refusal to settle in good faith claim.

However, the affirmative defense of advice of counsel is not applicable to Plaintiff's UDTPA claim. The purpose of pleading the defense of advice of counsel in the context of an insurance bad faith claim is to allow the defendant to show it acted in good faith. See 16 Am. Jr. Proof of Facts 3d. 419 (1992). However, it is well accepted by North Carolina courts that good faith is not a defense to a claim for unfair or deceptive trade practices. Gray, 352 N.C. at 68, 529 S.E.2d at 683. Thus, advice of counsel cannot be asserted as an affirmative defense to Plaintiff's unfair and deceptive trade practices claim. Accordingly, the Court will grant Plaintiff's Motion and will strike the affirmative defense of advice of counsel as legally insufficient as to Plaintiff's UDTPA claim.

III.    CONCLUSION

For the reasons discussed above, it is ORDERED that Defendant's Motion for Judgment on the Pleadings [Doc. #21] shall be GRANTED IN PART and DENIED IN PART. Specifically, Defendant's Motion for Judgment on the Pleadings [Doc. #21] will be GRANTED as to Plaintiff's breach of contract claim and DENIED as to Plaintiff's unfair or deceptive trade practices and refusal to settle in good faith claims.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Defendant's Affirmative Defenses [Doc. #28] will be GRANTED IN PART and DENIED IN PART. Specifically,

Plaintiff's Motion to Strike will be GRANTED and the following affirmative defenses will be STRICKEN as moot: (9) Accord and Satisfaction; (10) Statute of Limitations; (12) Laches; (13) Failure to Cooperate; and (14) Contract Defenses. IT IS FURTHER ORDERED that Plaintiff's Motion to Strike will be GRANTED and the following affirmative defenses will be STRICKEN as legally insufficient: (2) Arbitration and Award and (3) Unclean Hands. IT IS FURTHER ORDERED that Plaintiff's Motion to Strike the affirmative defense of (16) Advice of Counsel will be GRANTED as to Plaintiff's unfair or deceptive trade practices claim and DENIED as to Plaintiff's refusal to settle in good faith claim. IT IS FINALLY ORDERED that Plaintiff's Motion to Strike will be DENIED as to the affirmative defense of (11) Failure to Mitigate Damages.

This, the 16th day of January, 2013

United States District Judge