# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LAWRENCE D. GUESSFORD, JR.,    )
                                )
          Plaintiff,     )
                                )
     v.                   )       1:12CV260
                                )
PENNSYLVANIA NATIONAL MUTUAL    )
CASUALTY INSURANCE COMPANY,     )
                                )
          Defendant.    )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for disposition of Defendant's Motion for Protective Order (Docket Entry 25) and Defendant's First Motion to Compel Discovery Responses from Plaintiff (Docket Entry 59), as well as for recommended rulings on Plaintiff's Motion for Sanctions (Docket Entry 63) and Plaintiff's Renewed Motion for Sanctions (Docket Entry 90).[1] For the reasons that follow, Defendant's

---

[1] In general, "[an] order disposing of [a] . . . motion for sanctions is undoubtedly a nondispositive matter . . . ." Kebe ex rel. K.J. v. Brown, 91 F. App'x 823, 827 (4th Cir. 2004). However, because Plaintiff's instant Motions for Sanctions expressly seek the striking of Defendant's Answer (see Docket Entry 63 at 1; Docket Entry 90 at 2), the undersigned Magistrate Judge deems them, in essence, motions for default judgment, see A.V. by Versace, Inc. v. Gianni Versace S.p.A., Nos. 96Civ.9721, 98Civ.0123, 01Civ.9645, 2005 WL 147364, at *3 (S.D.N.Y. Jan. 24, 2005) (unpublished) ("[S]anctioning [a defendant] by striking his pleadings is tantamount to a default judgment."). The undersigned Magistrate Judge thus opts to enter a recommendation as to said Motions. See Baltimore Line Handling Co. v. Brophy, 771 F. Supp. 2d 531, 534 (D. Md. 2011) ("A motion for default judgment is a dispositive motion for purposes of the Magistrate Judges Act.").

instant Motions will be denied (except as to protection of certain personal information of a third-party) and Plaintiff's instant Motions should be denied (except as to certain cost-shifting).

## I.  BACKGROUND

This case arises from Plaintiff's First Amended Complaint, which alleges, in pertinent part, that Defendant violated North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, and committed the North Carolina tort of bad faith refusal to settle, in connection with an under-insured motorist claim Plaintiff made upon Defendant, an insurer. (See Docket Entry 18, ¶¶ 53-69; see also Docket Entry 51 at 7-22, 28 (granting Defendant judgment on the pleadings as to Plaintiff's breach of contract claim, but permitting UDTPA and bad faith claims to proceed).)  Shortly after discovery began, Plaintiff filed his First Motion to Compel (Docket Entry 22), whereupon Defendant filed its instant Motion for Protective Order (Docket Entry 25), along with a certification (pursuant to this Court's Local Rule 37.1(b)) that the Parties agreed to present that matter at a one-hour hearing without briefing (id. at 1).  Subsequently, in responding to Plaintiff's First Motion to Compel, Defendant stated that it "has been willing to provide (and now has provided) almost all of the documents in [its] claim file [regarding Plaintiff] and in the [related] file of [the outside attorneys upon whom it relied for an advice of counsel defense], subject to an appropriate [p]rotective

-2-

[o]rder for those documents that are confidential or are proprietary in nature." (Docket Entry 30 at 3.) Defendant further reported that it "produced to Plaintiff responsive claims manuals in confidence until this Court enters its [o]rder with respect to [Defendant's instant] Motion for Protective Order." (Id. at 16.)

As to the protective order issue, Defendant asserted that it "has a proprietary interest in the contested documents [from its claim file regarding Plaintiff, the related file of its attorneys, and its claims manual-type materials]." (Id. at 8.) To support that assertion, Defendant cited an affidavit of an attorney in its employ. (Id. (citing Docket Entry 30-17).) Plaintiff responded with a filing asserting that "the subject documents do not qualify for protection under Rule 26" (Docket Entry 32 at 1) and confirming that the Parties had agreed to submit the matter via a one-hour hearing without briefing (id. at 2). In addition, with the Court's permission (see Text Order dated Aug. 27, 2012), Plaintiff filed under seal examples of the documents for which Defendant sought protection (see Docket Entries 36-1, 36-2, 36-3).

The undersigned Magistrate Judge subsequently held a hearing on Defendant's instant Motion for Protective Order at which counsel for the Parties made argument, submitted for inspection under seal a copy of all the documents which Defendant sought to protect, and agreed to provide under seal deposition materials cited at the hearing. (See Docket Entry dated Nov. 16, 2012.) Defendant

-3-

thereafter filed under seal transcript pages from the deposition of a former employee and a related exhibit. (Docket Entries 42, 42-1, 42-2, 42-3.)[2] The Court (per the undersigned Magistrate Judge) also deemed moot Plaintiff's First Motion to Compel because, "at th[e] hearing, the parties agreed that Defendant had produced documents under a temporary agreement contingent on the resolution by the Court of [the instant] Motion for Protective Order by Defendant . . . ." (Text Order dated Nov. 18, 2012.)

A short time later, Plaintiff filed his Second Motion to Compel (Docket Entry 47), "seek[ing] responses to [eight] requests for production . . . which seek information about whether Defendant's management instructed or motivated its claims department employees to mishandle its insureds' first-party claims for underinsured motorist benefits, especially through delay, undervaluation, or failure to communicate" (id. at 2), as well as "a response to [an] interrogatory [] which seeks the revenue and net worth information necessary to present a claim for punitive damages" (id. at 5). Plaintiff further stated that "[t]he [P]arties agree that this matter can be ruled upon in an in-court hearing of no more than one hour, without briefing." (Id. at 12.)[3]

_____

[2] The undersigned Magistrate Judge has not considered Plaintiff's post-hearing filing (Docket Entry 43), which Defendant challenged as an unauthorized brief (see Docket Entry 44).

[3] Despite acknowledging that agreement (see Docket Entry 50 at 11), Defendant filed a brief (see id. at 1-11). The undersigned Magistrate Judge did not consider that brief in advance of the
(continued...)

-4-

After a stay of discovery (granted at the Parties' request to allow them to focus on a mediation that ultimately failed to resolve the case) (see Docket Entry 49; Text Order dated Jan. 29, 2013), the undersigned Magistrate Judge held a hearing, granted in part and denied in part Plaintiff's Second Motion to Compel, and directed the Parties to attempt to reach a resolution as to one of the disputed document requests (see Docket Entry dated Mar. 15, 2013).[4]  Defendant thereafter filed its instant First Motion to Compel (Docket Entry 59) and supporting brief (Docket Entry 60). Plaintiff responded in opposition (Docket Entry 67) and Defendant replied (Docket Entry 71).  Additionally, Plaintiff filed his instant Motion for Sanctions (Docket Entry 63) and related brief (Docket Entry 64).  Defendant responded in opposition (Docket Entry 68) and Plaintiff replied (Docket Entry 72).

The undersigned Magistrate Judge then held a hearing, orally denied Defendant's request for compelled production of further written discovery from Plaintiff and an unrestricted deposition of Plaintiff's attorney, directed the Parties to attempt to agree on the scope of a deposition of that attorney, reiterated that Plaintiff must not disclose, other than for purposes of this case,

_____

[3](...continued)
hearing, but permitted Defendant to make argument and to cite authority at the hearing.

[4] The Parties ultimately resolved that remaining, disputed matter.  (See  Docket Entry 55.)

material produced by Defendant from personnel files and regarding compensation plans, and deferred action on Plaintiff's request for sanctions to afford Defendant an opportunity to assess whether it should make a further production. (See Docket Entry dated May 3, 2013.) Ultimately, Defendant made a further production (see Docket Entry 76) and the Parties agreed on terms for the disputed deposition (see Docket Entry 77). After receiving Defendant's further production, Plaintiff filed his instant Renewed Motion for Sanctions. (Docket Entry 90.)

## II.  DISCUSSION

### A.  Defendant's Motion for Protective Order

Defendant "moves for entry of [a] [p]rotective [o]rder . . . pursuant to Rule 26(c) of the Federal Rules of Civil Procedure." (Docket Entry 25 at 1.) Specifically, it seeks an order mandating that documents produced from its claim file regarding Plaintiff, the related file of the attorneys upon whom it relies for an advice-of-counsel defense, and its claims manual-type materials "be restricted to this litigation, and returned or destroyed [at the end of the case] . . . ." (Docket Entry 30 at 6.) Defendant seeks such a protective order on the ground that it "has a proprietary interest in the contested documents." (Id. at 8.)

### i.  Outline of Governing Standard and Record Evidence

Under the Rule cited by Defendant, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance,

-6-

embarrassment, oppression, or undue burden or expense, including
. . . (G) requiring that a trade secret or other confidential
research, development, or commercial information not be revealed or
be revealed only in a specified way . . . ." Fed. R. Civ. P.
26(c)(1) (emphasis added). "To obtain a protective order under
Rule 26(c), the party resisting discovery must establish that the
information sought is covered by the rule and that it will be
harmed by disclosure." In re Wilson, 149 F.3d 249, 252 (4th Cir.
1998). Accordingly, in this context, Defendant must show that the
documents in question constitute trade secrets or other
confidential commercial information and that any public disclosure
of them will harm it. Moreover, "Rule 26(c)'s requirement of a
showing of 'good cause' to support the issuance of a protective
order . . . contemplates a *particular and specific demonstration of
fact* as distinguished from stereotyped and conclusory statements."
Jones v. Circle K Stores, 185 F.R.D. 223, 224 (M.D.N.C. 1999)
(Sharp, M.J.) (italics in original) (second set of internal
quotation marks omitted); accord, e.g., Baron Fin. Corp. v.
Natanzon, 240 F.R.D. 200, 202 (D. Md. 2006); Brittain v. Stroh
Brewery Co., 136 F.R.D. 408, 412 (M.D.N.C. 1991) (Eliason, M.J.).

To meet that burden, Defendant submitted an affidavit from one
of its attorneys stating, in pertinent part, as follows:

1) he is "privy to and participate[s] in [Defendant's]
development of its proprietary business documents, forms, and

-7-

processes . . . for evaluating and processing insurance claims"
(Docket Entry 30-17 at 2);[5]

2) he reviewed the documents "requested by [Plaintiff] in
discovery" (id.) and produced by Defendant to that point (as
documented on attached logs) (id. at 3);[6]

3) "[t]he insurance industry is a highly competitive business"
(id.);

4) the documents in question "are not documents that are
disclosed to the public" (id.);

5) Defendant "has invested significant time and resources into
the development of its proprietary [d]ocuments and processes for
which it seeks the requested [p]rotective [o]rder" (id.);

6) "these [d]ocuments and processes are proprietary to
[Defendant] and reflect significant business expenditures and
investments" (id.);

7) the documents in question "contain information that was not
and is not publicly available and which information, if disclosed

---

[5] Pin citations to this document (and other such documents
that bear cover pages and/or that consist of compilations bearing
assorted independent pagination) refer to the page numbers in the
footer appended thereto by the Court's CM/ECF system upon filing.

[6] Those logs identify 36 pages of documents (including an
"asset report") as containing "[p]ersonal information of [the
driver of the vehicle that collided with Plaintiff's vehicle]."
(Docket Entry 30-17 at 8.)   Plaintiff has not objected to
protection of such information under Federal Rule of Civil
Procedure 26(c).   To protect said third-party from annoyance,
embarrassment, and/or oppression, the Court finds good cause to
order Plaintiff not to disclose beyond this case personal
information of said third-party acquired solely from Defendant.

to the public, including without limitation, other insurance carriers, would damage [Defendant] in that its valuable business forms, processes and/or [d]ocuments would no longer be proprietary . . . [but] would be available for adoption by any other insurance carrier . . . [thus] damag[ing] [Defendant] by removing a competitive advantage" (id.); and

8) "[t]he materials for which [Defendant] seeks protection encompass strategies, techniques, goals, and plans for the evaluation of claims" (id. at 4).

To the extent this affidavit sets out conclusory assertions that the documents in question constitute "proprietary" material and/or that their public disclosure would "damage" Defendant, it fails to establish grounds for entry of a protective order. See, e.g., Jones, 185 F.R.D. at 224. Nor does the affidavit set out any basis for its assertions that the documents in question neither "are disclosed to the public" nor contain "publicly available" information. (Docket Entry 30-17 at 3.) Conversely, the record does bear deposition testimony by one of Defendant's (now former) employees who participated in the handling of Plaintiff's underlying under-insured motorist claim that:

1) the materials Defendant utilizes (and for which it seeks protection) do not reflect any unique approach to insurance claim-handling (see Docket Entry 42-1 at 2 (answering "No," when asked if Defendant "evaluate[d] claims any differently from [another insurer

-9-

with whom witness previously worked]," and "Yes," when asked if the "elements listed" on Defendant's forms represented "things [the witness] considered at [the other insurer for whom she worked]"));

    2) Defendant did not "require [the witness] to sign a nondisclosure agreement that [she] wouldn't disclose . . . the forms that [she] used" (id. at 4);

    3) the witness had no knowledge of Defendant "tak[ing] any steps to keep these forms secret" (id.); and

    4) "nobody ha[d] ever told" the witness that the forms were "[t]rade secret, proprietary, any of that" (id. at 5).

        ii. Analysis of Evidence in light of Standard

    "In order to obtain a protective order for confidential material, a party must show that the material is treated confidentially . . . ." Brittain, 136 F.R.D. at 415 (internal colon and parenthetical number omitted). The foregoing evidence does not permit a finding that Defendant treated the documents in question confidentially. Put another way, the affidavit submitted by Defendant fails to identify any action taken by Defendant to prevent public disclosure of the documents in question and the testimony of its former employee indicates that Defendant did not take any action to prevent such public disclosure. Moreover, at the hearing regarding this matter, Defendant's counsel could not proffer that his client had any policy that identified as confidential any materials used by its employees to handle claims

-10-

or that prohibited Defendant's employees from disclosing such materials or their contents. These circumstances alone warrant denial of Defendant's instant Motion for Protective Order. <u>See</u> <u>id.</u> (stating that, "to obtain a protective order for confidential material, a party must show that the material is treated confidentially" (internal colon and parenthetical number omitted)).

Additionally, "[D]efendant must show the need for the protective order and the harm resulting without one. This factor involves the value of the information to the business and its competitors." <u>Id.</u> In other words, "Rule 26(c)(1)(G) is limited to commercial information that has competitive significance." <u>In re</u> <u>Violation of Rule 28(d)</u>, 635 F.3d 1352, 1360 (Fed. Cir. 2011); <u>see</u> <u>also</u> <u>Ohio Valley Envtl. Coal. v. Elk Run Coal Co., Inc.</u>, ___ F.R.D. ____, ____, 2013 WL 1558418, at *4 (S.D.W. Va. 2013) ("To merit protection under Rule 26(c), commercial information must be more than just routine business data; instead, it must be important proprietary information that provides the business entity with a financial or competitive advantage when it is kept secret and results in financial or competitive harm when it is released to the public."). The above-quoted evidence from Defendant's former employee, as well as the undersigned Magistrate Judge's review of the documents in question, undermines Defendant's contention that public revelation of said documents would cause competitive harm of the sort that would justify the requested protective order.

More specifically, the cited deposition testimony indicates (and an in camera inspection confirmed) that the documents in question (which consist of forms, worksheets, reports, and related e-mails regarding Plaintiff, as well as claims manual-type documents) do not set forth unique or distinctive approaches to claim-handling; rather, they show that Defendant gathered the type of information one would expect in this context and organized it in a straight-forward manner.[7] A form submitted under seal by Plaintiff provides a good example; it carries the title "Bodily Injury Evaluation and Settlement Sheet" and contains simple, unremarkable, fill-in-the-blank boxes, such as "Insured," "Claimant," "Adjuster," "Claim Number," "Date," "Date of Loss," "Medical Treatment (Anticipated or Actual)" (with further sub-boxes of "Physicians," "Ambulance," "Radiology," "Hospital," "Drugs," "Physical Therapy," "Chiropractic," and "Other"), "General Damages" (with sub-boxes of "Pain & Suffering," "Permanency," "Disfigurement," and "Other"), "Lost Wage/Disability" (with sub-boxes of "Occupation," "Wage Rate," "How Verified," "Disabled," and "Projected Lost Wage"), "Mitigating Factors" (with sub-boxes of "Liability," "Credibility," "Contribution/Joint Tort Feasor,"

---

[7] Moreover, some items Defendant claims as its confidential information actually consist of public or industry-wide record compilations regarding Plaintiff apparently obtained by Defendant from third-party providers. (See Docket Entries 36-2, 36-3.)

"Jurisdiction," and "Other"), and "Reserves"[8] (with sub-boxes of "Initial," "Present," and "Suggested"). (Docket Entry 36-1 at 2.)

Similarly, the "Liability Large Loss Report," which (in her above-quoted testimony) Defendant's former employee described as a form used to record the same sorts of things she recorded when working for another insurer, features a nondescript cover page and a "Narrative" box divided into sub-boxes for "Insured and Coverage," "Facts/Allegations," "Claimant and Damages," and "Strategy/Recommendations." (Docket Entry 42-3 at 6-10.) Although one could conceive of a discussion under that last heading that might reveal "strategies, techniques, goals, and plans for the evaluation of claims" in a manner that would constitute commercially-sensitive information of the type Defendant's attorney-affiant asserts all the documents in question contain (Docket Entry 30-17 at 4), this material does not rise to that level. Instead, it consists of routine observations of this kind:

1) "The case is not in litigation. The statute of limitations will expire in approximately 10 months. If we cannot resolve the case, we expect that a lawsuit will be filed prior to July 2010 to toll the statute." (Docket Entry 42-3 at 8);

---

[8] In this context, "reserves" means "[s]ums of money an insurer is required to set aside as a fund for the liquidation of . . . claims accrued, but contingent and indefinite as to amount." Black's Law Dictionary 1307-08 (6th ed. 1990).

2) "The tortfeasor's limit of liability in the amount of $100,000 has been tendered by [her insurer]. An asset check was completed and forwarded to [an employee] in [Defendant's] Subrogation Department for review. [He] advises there was nothing in the asset report to suggest the tortfeasor would be able to repay the subrogation lien . . . ." (Id.); and

3) "[Plaintiff's] initial hospitalization appears to be related to the accident. However, information regarding treatment after his discharge is not complete and we have no records after July 2008. His current medical/disability status is unknown and although he remains out of work and currently receiving Worker's Compensation benefits, there is some concern that he has recovered from his injuries and may be working 'on the side' in some capacity. A recent asset check was unremarkable . . . ." (Id.).[9]

---

[9] Nor do the claims manual-type materials within the documents in question contain anything markedly revelatory. Instead, a document identified as a Litigation Manual sets forth the type of generic practices one would expect an insurer to have for handling lawsuit-related paperwork, considering settlement, working with defense counsel, engaging in alternative dispute resolution, and controlling legal expenses, along with a glossary of legal terms, sample forms and form letters, and lists of arbitrators and mediators. Defendant's Core Skills Manual, in turn, describes four areas in which its employees must demonstrate competency, i.e., technical knowledge, business, customer service, and interpersonal. Within each category, bullet-points identify expectations for three levels (i.e., fundamental, intermediate, and advanced). Again, the descriptions appear unremarkable. For example, in the area of technical knowledge, Defendant considers it necessary for all its employees to understand enough about tort law to investigate and process claims and to have sufficient keyboarding proficiency to type 35 words per minute, whereas, in the interpersonal realm, Defendant deems effectiveness under pressure and capacity for
(continued...)

The documents in question thus differ markedly from the types of commercial information that this Court and others have found worthy of protection under Federal Rule of Civil Procedure 26(c). See, e.g., Motto v. Correctional Med. Servs., No. 5:06CV163, 2009 WL 347432, at *5 (S.D.W. Va. Feb. 9, 2009) (unpublished) (cataloging cases involving "information contemplated by Rule 26(c) as trade secrets or confidential commercial information" and noting that they involve material such as "customer and supplier list and sales and revenue information," "information that reflects corporation's price competitiveness in market," "formulae and marketing strategy," and "customer and supplier list"); Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot., 224 F.R.D. 53, 57 (D. Conn. 2004) ("Pricing and marketing information are widely held to be confidential business information that may be subject to a protective order. In addition, courts often afford fuller protection to technical, proprietary information . . . ."); Brittain, 136 F.R.D. at 415 ("Confidential or commercial information includes market strategy and financial information of

---

[9](...continued)
facilitating meetings high level attributes. Defendant also has a document relating certain quality assurance standards that contains unsurprising directives, such as that the amount and type of investigation undertaken should correspond to the nature of the claim. Finally, Defendant seeks protection for its Fraud Investigation Manual, which provides rudimentary information, e.g., a directive that claims representatives talk with their supervisors when they see questionable claims, a dictionary definition of fraud, and the insight that arson fraud more often occurs when a business or homeowner has financial problems.

-15-

suppliers or distributors."). Simply put, the documents in question appear to represent "routine business data . . . [not] important proprietary information that provides [Defendant] with a financial or competitive advantage when it is kept secret and results in financial or competitive harm when it is released to the public," Ohio Valley, F.R.D. at , 2013 WL 1558418, at *4.[10]

The foregoing analysis establishes that: 1) Defendant cannot rely on the conclusory claims of harm in its attorney-employee's affidavit; and 2) the testimony of a former employee of Defendant's and an in camera inspection invalidated said affidavit's contention that the documents in question reveal unique claims-handling strategies or techniques. Accordingly, all that remains of the sole affidavit on which Defendant relies are the assertions therein about the competitiveness of the insurance business, the temporal

_____

[10] In other words, the undersigned Magistrate Judge's examination of the documents in question did not reveal anything sufficiently novel to require entry of a protective order. Nor, at the hearing on the instant Motion for Protective Order, did Defendant identify specific portions of the documents in question that it believed warranted protection. Instead, Defendant opted against any differentiation and left it to the Court to comb through each page. Although the undersigned Magistrate Judge has carefully scrutinized all the documents in question, grave doubt exists as to whether Defendant had the right to expect such. See, e.g., Estate of Manship v. United States, 240 F.R.D. 700, 702 (N.D. Ga. 2006) ("The Court's in camera review of the study did not reveal any non-public information. Even if the review had revealed information arguably entitled to trade secret protection, it is not the Court's obligation to guess as to what it might be."); Deford v. Schmid Prods. Co., 120 F.R.D. 648, 654 (D. Md. 1987) ("While a document-by-document analysis is not required, it is relevant that [the party seeking a protective order] failed to provide this Court with a single document as a concrete example of particular harm.").

-16-

and financial costs Defendant incurred in developing its various forms, and the prospect that other insurers could gain advantage by copying Defendant's forms. (<u>See</u> Docket Entry 30-17 at 3.) Such contentions do not suffice. <u>See, e.g.</u>, <u>Motto</u>, 2009 WL 347432, at *5 ("Although Defendants argue that they have expended significant time and expense developing their policies and that public dissemination would allow competitors to duplicate the policies without incurring any expense, other courts have rejected the above as grounds for finding that a company's policies qualify as confidential commercial information." (citing cases)).

iii. Case Authority addressing Claims-Handling Materials

Nor does the undersigned Magistrate Judge discern grounds for issuing a protective order in the four cases cited by Defendant for the proposition that claims manual-type materials "are confidential and not to be disclosed outside the litigation" (Docket Entry 30 at 16 (citing <u>Anderson v. The Reliance Standard Life Ins. Co.</u>, Civil No. WDQ-11-1188, 2012 WL 835722 (D. Md. Mar. 9, 2012) (unpublished); <u>Platt v. Fireman's Fund Ins. Co.</u>, Civil Action No. 11-4067, 2011 WL 5598359 (E.D. Pa. Nov. 16, 2011) (unpublished); <u>Altheim v. GEICO Gen. Ins. Co.</u>, No. 8:10CV156T24TBM, 2011 WL 1429735 (M.D. Fl. Apr. 14, 2011) (unpublished); <u>Taco, Inc. v.</u>

<u>Federal Ins. Co.</u>, C.A. No. 07-27S, 2007 WL 4269810 (D.R.I. Nov. 30, 2007) (unpublished))).[11]

In the first of those cases, a magistrate judge adjudicating a motion to compel ordered an insurer to produce "claims manual and related documents, but determined that while [the insurer] ha[d] failed to make a particularized showing of good cause . . . 'an insurance company's claims manual is the type of commercial information that warrants a confidentiality agreement when it is

---

[11] At the hearing on its instant Motion for Protective Order, Defendant did not cite authority beyond these four cases to support its view that the claims manual-type material it produced (or, for that matter, any other part of the documents in question) qualifies as confidential commercial information; however, during the hearing (as in its opposition to Plaintiff's First Motion to Compel (<u>see</u> Docket Entry 30 at 6)) Defendant did attempt to support its request for a protective order by pointing to the United States Supreme Court's statement that, "when <u>the purpose</u> of a discovery request is to gather information <u>for use in proceedings other than the pending suit</u>, discovery is properly denied," <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 352 n.17 (1978) (emphasis added). That citation does not aid Defendant in this circumstance, because Plaintiff clearly had a legitimate basis to request the documents in question <u>for use in this case</u> and the record contains no basis to conclude that this litigation represents a mere stalking-horse for some other contemplated action. <u>See</u> <u>In re Parmalat Sec. Litig.</u>, 258 F.R.D. 236, 246 (S.D.N.Y. 2009) ("Defendants cite to footnote 17 in <u>Oppenheimer Fund</u>, in which the Supreme Court cautioned that it would be improper to allow a party to obtain discovery when the purpose of the discovery request is to gather information for use in proceedings other than the pending suit. However, defendants do not claim that [the] [p]laintiffs instituted this action for the purpose of obtaining documents for use in other actions, nor do they deny that [the] [p]laintiffs requested discovery in this action for use in their prosecution of this action. As a result, <u>Oppenheimer</u>'s cautionary language is not applicable." (internal brackets, citations, and quotation marks omitted)). In other words, Defendant cannot satisfy its burden under Federal Rule of Civil Procedure 26(c) simply by asserting that, in the absence of a protective order requiring the return of the documents in question, Plaintiff's counsel ultimately may attempt to use them in future cases.

-18-

produced for discovery.'" <u>Anderson</u>, 2012 WL 835722, at *1 (quoting underlying order by magistrate judge). A district judge subsequently affirmed the propriety of such a protective order, despite recognizing that the magistrate judge's "failure to hold [the insurer] to its burden may have been error . . . ." <u>Id.</u> at *3. In so doing, the district judge construed the magistrate judge's "conclusion that the claims manual contain[ed] commercial information warranting protection [a]s a factual finding, entitled to significant deference." <u>Id.</u> (internal quotation marks omitted). In this case, for reasons previously discussed, the undersigned Magistrate Judge finds an insufficient basis to determine as a factual matter that the claims manual-type materials produced by Defendant constitute confidential commercial information under Federal Rule of Civil Procedure 26(c). Because <u>Anderson</u> does not explain how the magistrate judge reached his conclusion (or factual finding) that the claims manual materials at issue in that case qualified as confidential commercial information and because the district judge affirmed the entry of a protective order based on deference to that unexplained fact-finding, <u>Anderson</u> provides no persuasive authority for entry of a protective order in this case.[12]

---

[12] Put another way, <u>Anderson</u>'s holding that the magistrate judge "did not commit clear error in determining that the [claims] manual [at issue in that case] contain[ed] 'commercial information that warrant[ed] a confidentiality [order],'" <u>Anderson</u>, 2012 WL 835722, at *4, falls short of establishing that the claims manual-type materials within the documents in question here constitute confidential commercial information meriting a protective order.

-19-

The second opinion cited by Defendant, Platt, 2011 WL 5598359, carries even less persuasive force because said case did not involve a dispute over whether any claims manual-related materials came within the reach of Federal Rule of Civil Procedure 26(c). Instead, the court resolved a motion to compel production of such materials. See id. at *1-2. Moreover, the plaintiff had "pledge[d] to keep th[o]se materials confidential . . . ." Id. at *1. Given that agreement, the fact that the Platt Court, upon ordering production by the defendant, also ordered the plaintiff and her counsel "to keep confidential all materials they receive," id. at *2, does not logically lead to the conclusion that the claims manual-type materials produced by Defendant in this case constitute confidential commercial information.

Defendant's citation to Altheim, 2011 WL 1429735, flies even further afield, as said decision contains no determination of any sort that claims manual-type materials qualify as confidential commercial information. Instead, in discussing a series of motions in limine, the court merely took note that the defendant-insurer asserted that a state trade secret statute applied to such materials and ruled that, "if [the] [p]laintiff intends to introduce [the defendant-insurer's] manuals and training materials at trial and [the defendant-insurer] objects, [the] [p]laintiff should be prepared to address [any] privilege argument and be ready

to explain why non-disclosure of these documents at trial will result in injustice." Id. at *5.

The last opinion referenced by Defendant, Taco, 2007 WL 4269810, similarly lacks any determination that claims manual-type materials constitute confidential commercial information, but instead simply contains the observation that the "internal underwriting and claims manuals" ordered produced in that case "may be proprietary documents," such that the defendant-insurer "may condition production on an appropriate confidentiality order," id. at *3 (emphasis added). Any such "appropriate confidentiality order" necessarily would have to contain a provision that required the producing party, if challenged, to establish that material labeled as confidential commercial information, in fact, rises to such a level. See, e.g., Factory Mut. Ins. Co. v. Insteel Indus., Inc., 212 F.R.D. 301, 303 (M.D.N.C. 2002) (Osteen, Sr., J.) ("If good cause [is] not required to be shown when the order [i]s initially entered, the party who later seeks to prevent disclosure of the information bears the burden of showing good cause." (citing Longman v. Food Lion, Inc., 186 F.R.D. 331, 333 (M.D.N.C. 1999) (Beaty, J.))). In this case, Plaintiff has contested Defendant's ability to show that the claims manual-type materials within the documents in question actually represent confidential commercial information and, for reasons previously discussed, Defendant has failed to meet that burden.

-21-

Finally, the undersigned Magistrate Judge notes that independent research identified two other decisions of interest, Republic Servs., Inc. v. Liberty Mut. Ins. Cos., No. Civ. A. 03-494-KSF, 2006 WL 1635655 (E.D. Ky. June 9, 2006) (unpublished), and Bertelsen v. Allstate Ins. Co., 796 N.W.2d 685 (S.D. 2011), in which courts entered or approved protective orders precluding plaintiffs from making any disclosure outside the subject litigation of claims-handling materials produced by defendant-insurers. Those two cases, however, involved circumstances materially distinguishing them from the record facts in this case.

In the first of the foregoing opinions, the defendant-insurer presented uncontroverted evidence that:

> "[It] takes substantial security measures to ensure that . . . its claims handling materials remain strictly confidential within the company. [The defendant-insurer's] policies with regard to dissemination of [such materials] are given to all new employees when they are hired at the company. Those policies include prohibition of, among other things, disseminating any information contained in the claims handling materials. All [of the defendant-insurer's] employees agree not to disclose to persons outside of the company any confidential company information without the company's express permission.
>
> [The defendant-insurer's] employees who are given access to its computer systems have a user identification number and password and must agree not to disclose their passwords to others. [The defendant-insurer's] claims handling materials are provided only to [its] employees who are able to access the information via the company's password protected intranet system. The fact that this information is available only through the company's private intranet system constantly reminds [its] employees that this information is to be kept strictly confidential. Moreover, employees must return all company documents containing any confidential information

> when they terminate their employment with [the defendant-insurer] and are likewise required to surrender their intranet access. In addition, [the defendant-insurer] controls access to all of its business premises. Visitors are required to sign in and to be escorted by [the defendant-insurer's] personnel while on the premises. All of these security precautions are maintained at a significant expense to [the defendant-insurer]."

Republic Servs., 2006 WL 1635655, at *6 (internal parenthetical omitted) (quoting affidavit of the defendant-insurer's "Director of Technical Training, Commercial Services"). Similarly, in the second of the cases, a state supreme court ruled that "the trial court did not err by concluding that [the defendant-insurer's] claims manuals [and] training materials . . . contain trade secrets or other confidential commercial information," Bertelsen, 796 N.W.2d at 705; however, in so doing, the court expressly relied on the record evidence that "[a]t least two of the requested manuals contain[ed] a 'STATEMENT OF CONFIDENTIALITY . . . [that such] material ha[d] been compiled exclusively for internal use and [wa]s not for distribution outside of [the defendant-insurer or for] . . . use, reproduction, transmission, or disclosure . . . without the express permission of [the defendant-insurer]," id.

By contrast, as detailed in the preceding discussion, Defendant presented no evidence (or even proffers of evidence) that it took any steps to protect the confidentiality of the documents in question here and Plaintiff came forward with evidence from one of Defendant's former employees who dealt with Plaintiff's claim

-23-

indicating that Defendant, in fact, took no such action.  In sum, no pertinent persuasive (much less controlling) authority identified either by Defendant or through independent research supports Defendant's position on this issue.[13]

Conversely, the undersigned Magistrate Judge does find reinforcement for the view that the record facts in this case do not warrant entry of a protective order in Woo v. Fireman's Fund Ins. Co., 154 P.3d 236 (Wash. Ct. App. 2007).  In that case, the defendant-insurer presented evidence very similar in nature to the affidavit offered by Defendant.  See id. at 240.  Consistent with the conclusion reached in this case, the Woo Court held that "[t]he declarations [submitted by the defendant-insurer in that case were] too conclusory to prove that the claims manuals compile information in an innovative way.  The declarations do not supply any concrete

_____

[13] The Republic Servs. Court identified Hamilton v. State Farm Mut. Auto. Ins. Co., 204 F.R.D. 420 (S.D. Ind. 2001), as a decision it found "very instructive concerning the issues presently before [it]."  Republic Servs., 2006 WL 1635655, at *3.  In entering a protective order precluding disclosure outside that case of discovery regarding the defendant-insurer's claims-handling activity, the Hamilton Court found as a fact that "the materials [at issue] are in locking file cabinets and/or in areas not open to the public."  Hamilton, 204 F.R.D. at 423.  As discussed above, Defendant has failed to produce any such evidence in this case and the record reflects that it did not treat the documents in question as confidential in any discernible way.  Further, to the extent the courts in Republic Servs. and Hamilton relied on evidence that the defendant-insurer would suffer harm within the meaning of Federal Rule of Civil Procedure 26(c) because it expended significant resources to develop its forms and other insurers could obtain an unfair advantage by copying such forms, see Republic Servs., 2006 WL 1635655, at *7; Hamilton, 204 F.R.D. at 423, the undersigned Magistrate Judge finds more persuasive the view of other courts that such a showing generally does not establish grounds for entry of a protective order, see, e.g., Motto, 2009 WL 347432, at *5.

-24-

examples to illustrate how the strategies or philosophies of [the defendant-insurer's] claims handling procedures differ materially from the strategies or philosophies of other insurers." Id. at 489. Further, as the undersigned Magistrate Judge detailed regarding the in camera inspection of the documents in question in this case, the Woo Court determined from its "own review of the sealed exhibits . . . [that the defendant-insurer's] manuals simply set out good claims practices and philosophies that would be obvious to any insurance company . . . ." Id. Just as that determination supported the denial of relief to the defendant-insurer in Woo, the similar assessment in this case warrants denial of the instant protective order requested by Defendant.

### iv.  Summary

Given all of the foregoing circumstances, the undersigned Magistrate Judge concludes that, as to the documents in question, Defendant has failed to carry its burden of establishing good cause for entry of a protective order under Federal Rule of Civil Procedure 26(c), except as to the personal information of the driver of the vehicle that collided with Plaintiff's vehicle. Moreover, because Defendant has not shown entitlement even to a protective order regarding the remainder of the documents in question, no basis exists to maintain under seal any documents drawn from that group that the Parties have filed with the Court.

However, since the filing of the instant Motion for Protective Order, Defendant has produced (pursuant to orders issued by the undersigned Magistrate Judge) documents from its personnel files and regarding its compensation practices. In mandating such production, the undersigned Magistrate Judge explicitly held that such materials generally do qualify, under Federal Rule of Civil Procedure 26(c), for protection from disclosure outside the purposes of this litigation. See, e.g., Duling v. Gristede's Operating Corp., 266 F.R.D. 66, 72-73 (S.D.N.Y. 2010) (collecting numerous cases demonstrating that "courts have generally characterized personnel files as confidential and found it appropriate to enter protective orders governing their use in litigation because of the inherent potential for harm or embarrassment if the information they contain is revealed"); Laborers Pension Trust Fund - Detroit & Vicinity v. CRS Poured Concrete Walls, Inc., No. 04CV74714DT, 2006 WL 3804912, at *7 (E.D. Mich. Dec. 22, 2006) (unpublished) (recognizing "sensitive commercial nature of [company's] bonus plan details"). As a result, the undersigned Magistrate Judge orally ordered that Plaintiff had to refrain from disclosing such materials to third-parties and had to return them to Defendant at the conclusion of this litigation. Those directives remain in effect.[14]

---

[14] The existence of that protective order, however, does not mean that the parties may file such documents under seal,
(continued...)

## B. Defendant's First Motion to Compel

In its instant First Motion to Compel, Defendant sought the following:

1) "[f]ull and complete responses to Interrogatory Number 5 in [its] First Interrogatories, without allowing Plaintiff to rely upon any claims of privilege that could have been stated in a privilege log with his initial response" (Docket Entry 59 at 3);

2) "full and complete responses to Request for Production of Documents Numbers 1, 2, and 8 in [its] First Requests for

---

[14](...continued)
particularly in connection with dispositive motions, without making a further showing under the applicable Fourth Circuit standard(s). See, e.g., Colony Ins. Co. v. Peterson, No. 1:10CV581, 2012 WL 1047089, at *2 (M.D.N.C. Mar. 28, 2012) (unpublished) ("[T]he standard for maintaining information exchanged during the course of discovery as confidential [pursuant to Federal Rule of Civil Procedure 26(c)] and the standard for maintaining information filed with the Court under seal do not necessarily align — especially when the documents a party seeks to seal are filed in connection with a dispositive motion . . . ."); Walhonde Tools, Inc. v. Allegheny Energy, Inc., Civil Action No. 2:06-0537, 2008 WL 4509365, at *1-2 (S.D.W. Va. Sept. 30, 2008) (unpublished) (applying tests in Virginia Dep't of State Police v. The Washington Post, 386 F.3d 567, 575 (4th Cir. 2004), Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988), and Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 252-54 (4th Cir. 1988), in denying plaintiffs' unopposed motion "requesting leave to file under seal six exhibits attached to their motion for summary judgment . . . [where] plaintiffs assert[ed] that the documents at issue have been designated as confidential pursuant to protective orders"); Hall v. United Air Lines, Inc., 296 F. Supp. 2d 652, 679-80 (E.D.N.C. 2003) (ordering unsealing of documents filed under seal pursuant to protective order unless parties filed "a brief complying with the Fourth Circuit's mandate, demonstrating the necessity and propriety of sealing information" and observing that, in entering protective order prospectively authorizing sealed filings, "magistrate judge did not review the motion in accordance with the mandatory procedure outlined by the Fourth Circuit in Stone" (internal brackets, ellipses, and quotation marks omitted)).

Production of Documents; without allowing Plaintiff to rely upon any claims of privilege that could have been stated in a privilege log with his initial responses" (id.);

3) "full and complete responses to" six additional interrogatories, three additional document requests (including Numbers 4 and 9), and eight requests for admission (id. at 3-4);

4) an order "[r]equiring [one of Plaintiff's attorneys of record] to sit for a deposition without allowing Plaintiff to rely upon any claims of privilege" (id. at 4); and

5) cost-shifting under Federal Rule of Civil Procedure 37 (id.).

Defendant's 20-page supporting brief, however, developed arguments only regarding Interrogatory Number 5, Requests for Production Numbers 1, 2, and 8, and the deposition of Plaintiff's attorney. (See Docket Entry 60 at 6-18.) As to the 17 other discovery matters nominally referenced in its instant Motion to Compel and related brief (including Requests for Production Numbers 4 and 9), Defendant sought to rely on arguments set out in three attached letters (two of which bore dates preceding its filing of the instant Motion to Compel by four and three days, respectively) which Defendant purported to "incorporate[] by reference as if fully restated herein . . . ." (Id. at 16.)

The undersigned Magistrate Judge thereafter shortened the response and reply times, ordered counsel for the Parties to confer

-28-

in person "for the purpose of reaching a good-faith accommodation regarding some or all of the matters at issue," required the filing of a status report as to the results of that conference, and set a hearing. (Text Order dated Apr. 19, 2013.) After Plaintiff timely responded (Docket Entry 67), the Parties filed their Joint Statement (Docket Entry 70), which reported that they had "resolve[d] some of the issues in dispute" (id. at 1), but that disagreement remained as to Interrogatory Number 5, Request for Production Numbers 4, 8, and 9, "[w]hether the deposition of Plaintiff's attorney . . . will be an 'unrestricted' deposition," and cost-shifting (id. at 1-2). Defendant also replied (Docket Entry 70) and therein reiterated its position, inter alia, that the Court should order "a full and unrestricted deposition of [Plaintiff's attorney]" (id. at 9; see also id. at 10 (requesting order directing Plaintiff's attorney "to sit for a deposition without allowing Plaintiff to rely on any claims of privilege")).

    After the Parties had a full opportunity to present their positions at the hearing, the undersigned Magistrate Judge (for reasons detailed on the record) orally denied Defendant's request for an "unrestricted" deposition of one of Plaintiff's counsel of record without any right to assert privilege in response to any inquiry as oppressive, unduly burdensome, and an unwarranted intrusion into matters protected from disclosure by the attorney-

client privilege and the work product doctrine;[15] additionally, the undersigned Magistrate Judge declined to order any further response from Plaintiff to Defendant's Interrogatory Number 5 and Request for Production Numbers 4, 8, and 9. (See Docket Entry dated May 3, 2013.) As to Interrogatory Number 5, the undersigned Magistrate Judge concluded that, consistent with Plaintiff's proper objection (see Docket Entry 60-1 at 6), Defendant's demand for a detailed description[16] of "each and every communication between [Plaintiff] and [one of his attorneys of record] from the date of [his] [a]ccident [in July 2007] to [the institution of this lawsuit on] February 14, 2012, and each document that memorializes, references, or reflects such communications" (id. at 5-6) constituted a facially overbroad and unduly burdensome request that improperly sought to invade attorney-client privileged communications.[17]

Regarding Requests for Production Numbers 4 and 9, the undersigned Magistrate Judge ruled that, by failing to develop any

---

[15] Because Plaintiff already had agreed that Defendant could depose one of his attorneys about some matters, the Court ordered counsel for the Parties to confer in a good-faith attempt to reach agreement on the proper scope of that deposition in light of guidance provided at the hearing; the Parties subsequently reported that they had resolved that matter. (See Docket Entry 77.)

[16] Although Interrogatory Number 5 used the word "Identify," according to the relevant definitions included with said Interrogatory (as related by Defendant's counsel at the hearing), Plaintiff had to provide a detailed description of every communication that occurred over the nearly five-year period.

[17] At the hearing, Defendant acknowledged Plaintiff had no obligation to submit a privilege log as to Interrogatory Number 5.

argument about said Requests in its brief in support of its instant Motion to Compel, Defendant had forfeited any right to relief. Alternatively, as to Request for Production Number 4, the undersigned Magistrate Judge held that, given the marginal (at best) value of the evidence sought, the burden associated with further production of tax-related documents outweighed any likely, legitimate benefit. Similarly, in the alternative concerning Request for Production Number 9, the undersigned Magistrate Judge concluded, based on an in camera inspection, that the additional documents identified by Plaintiff as potentially responsive consisted of material protected by the work product doctrine and/or of such minimal conceivable relevance (even under the liberal view of relevance at the discovery stage) that the burden of further production outweighed any benefit.

As to Request for Production Number 8, the undersigned Magistrate Judge determined that, by demanding "[a]ll [d]ocuments contained in the files of [one of Plaintiff's counsel of record and her law firm], specifically, concerning (a) [Plaintiff's] [a]ccident; (b) [Plaintiff's] workers' compensation claim relating to [his] [a]ccident; (c) [Plaintiff's] litigation against [the driver of the vehicle that collided with Plaintiff's vehicle] relating to the [a]ccident; (d) [Plaintiff's] claim for underinsured motorist benefits under [a policy issued by Defendant] relating to [his] [a]ccident; and/or [(e)] the [a]rbitration of

that underinsured motorist claim, up to and including [the date Plaintiff instituted this lawsuit]" (Docket Entry 60-1 at 14), Defendant had (consistent with Plaintiff's proper objection (see id. at 14-15)) interposed a facially overbroad and unduly burdensome request that pried improperly into matters protected by the attorney-client privilege and the work product doctrine.

In light of the denial of Defendant's instant Motion to Compel and because, after a full and fair opportunity for argument at the hearing, Defendant failed to show either any substantial justification for said Motion or that other circumstances make an award of expenses unjust,[18] the Court must require Defendant and/or its counsel to pay Plaintiff the reasonable expenses, including attorney fees, that he incurred in opposing said Motion. See Fed. R. Civ. P. 37(a)(5)(B); see also Biovail Corp. v. Mylan Labs., Inc., 217 F.R.D. 380, 382 (N.D.W. Va. 2003) ("'The great operative principle of [Rule 37] is that the loser pays.'" (quoting Rickels

_____

[18] In this regard, the undersigned Magistrate Judge observes that no (much less a substantial) justification exists for Defendant: 1) to have sought relief as to Requests for Production Numbers 4 and 9 without properly briefing such matters; and 2) to have requested detailed descriptions of every communication between Plaintiff and one of his counsel of record for a nearly five-year period, every document in the files of said attorney and her law firm regarding anything remotely connected to this case for the same time period, and a totally unlimited deposition of said attorney in which she could not assert any claim of privilege. By pursuing the latter matters, Defendant and its counsel engaged in gross over-reaching and unreasonably persisted in that improper course of conduct even after the undersigned Magistrate Judge mandated good-faith consultation. A failure to order cost-shifting under such circumstances would do serious violence to the principles underlying Federal Rule of Civil Procedure 37.

-32-

v. City of South Bend, 33 F.3d 785, 786 (7th Cir. 1994))).
Accordingly, the undersigned Magistrate Judge will order counsel
for the Parties to confer about the amount of such expenses and,
failing an agreement thereon, to appear for a hearing.

   C.  Plaintiff's Motion (and Renewed Motion) for Sanctions

   On March 15, 2013, the Court (per the undersigned Magistrate
Judge) held a hearing on Plaintiff's Second Motion to Compel
(Docket Entry 47). (See Docket Entry dated Mar. 15, 2013.) At the
hearing, the Court first took up Plaintiff's Request for Production
Number 3, "which request[ed] the personnel file of Defendant's
employees who were involved in the Plaintiff's case." (Docket
Entry 64-1 at 2.) During the ensuing discussion, the Court took
note of Plaintiff's argument that material within such personnel
files regarding "compensation or the way that the employee is
recognized or promoted" could show that such employees had
incentives that affected their handling of Plaintiff's under-
insured motorist claim. (Id. at 4 (emphasis added).) In that
regard, the Court observed that "the information in a personnel
file could say like, for example, this person got counseled; hey
you're not -- you're giving away too much of our money, you better
cut back or you're going to get fired." (Id.) At the conclusion
of the discussion regarding Request for Production Number 3, the
Court ruled "that information about -- in a personnel file of
employees who handled this particular claim about incentives or

disincentives they might have for evaluating the value of a claim is relevant and is not -- its value is not outweighed by the -- any personal privacy or business confidentiality interest." (Id. at 6; see also id. ("[A]nything in a personnel file from a person involved in the handling of this claim that was dated on or after January 1st, 2005 that would tend to indicate incentives or disincentives for placing a higher or lower value on a claim . . . has been determined to be relevant and so the Defendant's obligation is to identify and turn over any documents that are responsive to the -- that request as modified.").) Three days later, the Court (per the undersigned Magistrate Judge) entered a Text Order documenting the entry of an oral order at the hearing on March 15, 2013. (See Text Order dated Mar. 18, 2013.)

Defendant thereafter served supplemental discovery responses, including copies of performance evaluations from three personnel files, but with redactions of all (or, at least, virtually all) the narrative comments within said evaluations. (See Docket Entries 65-1, 66-1.)[19]  Plaintiff then filed his instant Motion for

---

[19] Plaintiff properly filed those materials under seal, given that the Court (per the undersigned Magistrate Judge) had orally ordered Plaintiff not to disclose such personnel material to third-parties and given authority recognizing that "material filed with discovery motions is not subject to the common-law right of access," Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001); accord Anderson v. Cryovac, Inc., 805 F.2d 1, 10 (1st Cir. 1986) ("Although we agree that the public has a right of access to some parts of the judicial process, we conclude that this right does not extend to documents submitted to a court in connection with discovery proceedings.").

-34-

Sanctions (Docket Entry 63), seeking an order, inter alia, "striking the Answer of Defendant in the event that the material redacted by Defendant falls squarely and unambiguously within the scope of the Court's earlier Order . . .[,] compelling Defendant to produce the un-redacted personnel files . . . as ordered at the [h]earing on March 15, 2013, . . . [and requiring] payment of attorney fees and expenses related to Plaintiff's efforts to enforce compliance [with the Court's order]" (id. at 1-2). In his supporting brief, Plaintiff argued that Defendant wrongly construed the Court's directives regarding the nature of the material within such personnel files that Defendant had to produce. (See Docket Entry 64 at 5-6, 12, 13.)[20]

Defendant responded by stating, in relevant part, that:

1) "to the extent the Court has ordered [Defendant] to produce documents regarding 'incentives and disincentives,' [Defendant's] original objections to Request for Production of Documents Number[] 3 . . . w[as] sound -- [Defendant] objected that the documents were 'not relevant to the subject matter of this action'" (Docket Entry 68 at 9);

---

[20] Plaintiff also raised an issue regarding Defendant's failure to produce an appendix to a compensation plan as to which the Court had required supplemental production (in connection with Plaintiff's Request for Production Number 19). (See Docket Entry 63 at 2; Docket Entry 64 at 7-9, 12.) However, when Defendant responded, it reported that it had produced said appendix as soon as it was located. (Docket Entry 68 at 5.) Plaintiff did not contest that matter further in its reply (Docket Entry 72) or at the hearing held on May 3, 2013.

-35-

2) Defendant "has no incentive program that encourages its employees to pay less than is owed on any claim" (id.);

3) Defendant "does have a program called the 'Alternative Compensation Plan,' which . . ., out of an abundance of caution, [Defendant] has provided . . . to the Plaintiff because it is the only program for which [Defendant's] claims employees involved in [Plaintiff's] claim might have been eligible that could theoretically be responsive to the Court's Order" (id. at 9-10);

4) "[t]he only possible figure in the employee personnel files that relates to the Alternative Compensation Plan is the overall employee's score for the given year" (id. at 10); and

5) "[a]ccordingly, the only page of any personnel file that would be responsive to the Court's Order of March 15, 2013, is the page that includes that final number" (id.).

The undersigned Magistrate Judge thereafter held a hearing regarding Plaintiff's instant Motion for Sanctions. (See Docket Entry dated May 3, 2013.) During that hearing, the undersigned Magistrate Judge read aloud portions of the hearing transcript from March 15, 2013, and advised Defendant that its redaction of all (or virtually all) narrative text from the employee evaluations appeared inconsistent with the discussion at the hearing. In addition, the undersigned Magistrate Judge noted that Defendant's response to the instant Motion for Sanctions seemed to ignore the possibility, discussed at the hearing on March 15, 2013, that

-36-

narrative-type comments about employee performance could reveal incentives to value claims in a certain way. The undersigned Magistrate Judge then gave Defendant the choice of reconsidering its redactions before any in camera review of the employee evaluations occurred or having the undersigned Magistrate Judge proceed immediately with such review, with the understanding that, if such review revealed material Defendant should have disclosed, significant sanctions likely would result. Defendant opted to re-examine its redactions and subsequently made a further production that generally disclosed the narrative portions of the employee evaluations. (See Docket Entry 76.)

Upon receiving and reviewing that further production, Plaintiff filed his instant Renewed Motion for Sanctions (Docket Entry 90), which "requests the Court strike Defendant's [A]nswer and award Plaintiff the costs of [the said] [M]otion" (id. at 2). In support of that request, Plaintiff argued that "[t]he entirety of the unredacted material shows that Defendant willfully violated the Court's clear order by redacting the compelled documents. . . . Plaintiff should not have had to move to compel these documents in the first place. Then, after the Court compelled production, a good faith response would have produced unredacted or reasonably redacted documents, in spite of any potential misunderstanding of the Court's oral order." (Docket Entry 91 at 3.)

-37-

"If a party . . . fails to obey an order to provide or permit discovery, . . . the [C]ourt . . . may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A).  Potential sanctions include orders "striking pleadings in whole or in part."  Id.  "Instead of or in addition to [the sanctions described in subparagraph (A)], the [C]ourt must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

The Court has discretion regarding whether, and to what extent, to impose sanctions under Federal Rule of Civil Procedure 37(b)(2)(A).  See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642-43 (1976). "It is not, however, a discretion without bounds or limits but one to be exercised discreetly and never when it has been established that failure to comply has been due to inability, and not to wilfulness, bad faith, or any fault of the non-complying party." Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 503 (4th Cir. 1977) (internal footnote, parentheses, and quotation marks omitted).  Moreover, the Court must act with particular circumspection in imposing case-dispositive sanctions.  See id. at 503-04.  Accordingly, in exercising its discretion under Federal Rule of Civil Procedure 37(b)(2)(A), the Court generally must consider:  "(1) whether the

-38-

noncomplying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of noncompliance, and (4) whether less drastic sanctions would have been effective." <u>Anderson v. Foundation for Advancement, Educ, & Emp't of Am. Indians</u>, 155 F.3d 500, 504 (4th Cir. 1998).

The undersigned Magistrate Judge agrees with Plaintiff that Defendant and its counsel unreasonably construed the oral order issued on March 15, 2013, regarding the scope of the production required from personnel files. A reasonable construction of that order would have led Defendant to include within its production some of the narrative material that Defendant redacted in toto. For example, Defendant's most-recent production revealed that one evaluation contained praise for an employee because he "employs the 'low and slow' method of negotiating, which has proven to achieve successful settlement resolutions." (Docket Entry 92-3 at 4.) Such comments at least arguably reflect an effort by Defendant to promote the under-valuing and delaying of claims by employees.

However, given that the undersigned Magistrate Judge expressly gave (and Defendant accepted) the option of re-assessing its redactions before any in camera inspection and final evaluation of Plaintiff's instant Motion for Sanctions occurred, imposition of case-dispositive sanctions, such as Plaintiff has requested, would be unfair. Plaintiff has not articulated particular prejudice

-39-

arising from the delay and, under the unique circumstances of this case, less drastic sanctions in the form of cost-shifting would more appropriately serve the need for deterrence.

### III. CONCLUSION

Defendant failed to show good cause for entry of a protective order as to any discovery material it produced to Plaintiff as of the hearing on November 16, 2012, except for personal information of the driver of the vehicle that collided with Plaintiff's vehicle. Since that hearing, however, the Court has ordered Defendant to produce additional discovery that qualifies for protection, including material from personnel files and regarding compensation plans. In so doing, the Court (per the undersigned Magistrate Judge) orally required Plaintiff not to disclose such material to third-parties and to return it to Defendant at the conclusion of this case. That order remains in place, but does not authorize any party to file such material with the Court under seal in connection with matters beyond discovery motions; instead, to make such sealed filings, a party must satisfy the standards established by the Fourth Circuit for such action.

Next, for reasons detailed at the hearing on May 3, 2013, Plaintiff need not produce further written discovery to Defendant (as requested in its instant First Motion to Compel). Moreover, after the Court (per the undersigned Magistrate Judge) orally denied Defendant's request for an unrestricted deposition of one of

-40-

Plaintiff's attorneys at the hearing on May 3, 2013, the Parties agreed to limitations on the scope of that deposition, thus mooting any remaining aspect of Defendant's instant First Motion to Compel. In light of the denial of said Motion and the absence of any substantial justification therefore or of other considerations rendering such payment unjust, Defendant must pay Plaintiff the reasonable expenses he incurred in opposing said Motion.

Finally, given all the relevant circumstances, the Court should decline Plaintiff's request for case-dispositive sanctions against Defendant for its belated production of material within personnel files and instead should order cost-shifting.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Protective Order (Docket Entry 25) is **DENIED**, except that Plaintiff shall not disclose for any purpose outside of this case any personal information regarding the driver of the vehicle that collided with Plaintiff's vehicle, to the extent Plaintiff obtained such information solely from discovery produced by Defendant.

**IT IS FURTHER ORDERED** that the Clerk shall unseal Docket Entries 32, 36, and 42, as well as all attachments thereto.

**IT IS FURTHER ORDERED** that the Clerk shall make inquiry of counsel for the Parties as to whether any basis remains for Exhibits (Docket Entry 83) to remain under seal, in light of the foregoing disposition of Defendant's Motion for Protective Order (Docket Entry 25) and the Court's Order (Docket Entry 97), which

conditionally sealed said Exhibits contingent on the disposition of said Motion for Protective Order.

**IT IS FURTHER ORDERED** that Defendant's First Motion to Compel Discovery Responses from Plaintiff (Docket Entry 59) is **DENIED** and that, pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), Defendant and/or its counsel shall pay Plaintiff the reasonable expenses, including attorney fees, he incurred opposing said Motion.

**IT IS FURTHER ORDERED** that counsel for the Parties promptly shall meet and confer about the amount of such expenses, shall file a Joint Notice regarding any agreement reached and/or the nature of any remaining disagreement regarding that matter by June 4, 2013, and (to the extent any disagreement remains) shall appear for a hearing (at which the undersigned Magistrate Judge will receive evidence and/or argument regarding any dispute over the amount of such expenses) in Courtroom 1A of the L. Richardson Preyer United States Courthouse, Greensboro, North Carolina, at 3:30 p.m., on June 7, 2013.

**IT IS RECOMMENDED** that Plaintiff's Motion for Sanctions (Docket Entry 63) and Plaintiff's Renewed Motion for Sanctions (Docket Entry 90) be denied except as to cost-shifting.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 21, 2013