IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LAWRENCE D. GUESSFORD, JR.         )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )   1:12CV260
                                    )
PENNSYLVANIA NATIONAL               )
MUTUAL CASUALTY                     )
INSURANCE COMPANY,                  )
                                    )
        Defendant.                  )

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This Court entered a Memorandum Opinion and Order [Doc. #174] on October 18, 2013, resolving parties' respective Motions for Partial Summary Judgment [Docs. #82, #107]. In response, Lawrence Guessford, Jr. ("Plaintiff") filed a Motion for Reconsideration and Motion to Shorten Time to Respond Thereto ("Motion for Reconsideration") [Doc. #176] on October 21, 2013, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Pennsylvania National Mutual Casualty Insurance Company ("Defendant") filed a Response in Opposition to the Motion for Reconsideration [Doc. #178] on October 23, 2013, to which Plaintiff on October 24, 2013, submitted a Reply [Doc. #179]. For the reasons set forth below, this Court will DENY Plaintiff's Motion for Reconsideration [Doc. #176].

I.  FACTUAL BACKGROUND

This case involves two remaining claims surrounding an underinsured motorist insurance policy issued by Defendant to Plaintiff's employer, Waggoner Manufacturing, Inc. ("Waggoner"). The event underlying the case was a motor vehicle accident on July 6, 2007, in which Plaintiff was traveling on Highway 29 in Salisbury, North Carolina, in a vehicle owned by his employer, Waggoner. A vehicle owned and operated by Rebecca Moore Corriher ("Ms. Corriher") turned left onto Highway 29, directly in front of Plaintiff's oncoming vehicle, causing a collision between Plaintiff's vehicle and Ms. Corriher's vehicle. At the time of the collision, Ms. Corriher carried a liability insurance policy issued by Nationwide Mutual Insurance Company ("Nationwide") with liability insurance coverage limits of $100,000 per person injured. Additionally, because the crash occurred while Plaintiff was in the scope of his employment, Plaintiff was entitled to workers' compensation benefits, which he received through his employer's workers' compensation insurer, Hartford.

Though the collision occurred on July 6, 2007, Plaintiff did not discover the insurance policy issued by Defendant, providing coverage for Waggoner's vehicle at the time of the collision, until March of 2009. This policy contained underinsured motorist liability ("UIM") coverage up to $1,000,000. Particularly relevant for the present motion, the Court notes that in a letter dated March 6, 2009, Ms. Corriher's insurer, Nationwide, notified Plaintiff's counsel and Defendant via letter that it tendered its liability limit of $100,000 to Plaintiff in exchange for a covenant not to enforce judgment. The letter also stated that Defendant had 30 days to either advance the policy limit in order to protect its subrogation rights, or forgo subrogation and allow Nationwide to pay its policy limit directly to Plaintiff.

After receiving this notification, Defendant notified Plaintiff via a letter dated April 20, 2009, that Defendant elected not to advance Nationwide's tender, choosing instead to waive its subrogation rights against Ms. Corriher. Plaintiff himself describes these actions of accepting the full liability policy limits from Nationwide and executing a covenant not to enforce judgment against Ms. Corriher as "settl[ing] his claim against [Ms.] Corriher." (Am. Compl. [Doc. #18] ¶ 9.)

As communications between Plaintiff and Defendant continued on into 2010 with no resolution of Plaintiff's UIM claim, Plaintiff's counsel sent Defendant a formal demand for arbitration on March 15, 2010. (Pl.'s Mot. for Partial Summ. J. Ex. 8 [Doc. #82-8] ("Please accept this letter as Mr. Guessford's formal demand for arbitration . . . .").) In addition, Plaintiff's counsel repeatedly communicated her continuing concern about the statute of limitations running against the tortfeasor, Ms. Corriher. (Pl.'s Mot. for Partial Summ. J. Ex. 10 [Doc. #82-10]; see also Ex. 9 [Doc. #82-9], Ex. 12 [Doc. #82-12].) Specifically, in a letter dated June 11, 2010, Plaintiff's counsel asserted that she was "prepared to initiate a lawsuit against Ms. Corriher personally if [Defendant did] not agree to waive any defenses relating to a statute of limitations." (Pl.'s Mot. for Partial Summ. J. Ex. 10 [Doc. #82-10].)

Defense counsel, however, was under the impression that Plaintiff's demand for arbitration of the UIM claim would toll the requisite statute of limitations as to any civil action that needed to be filed by Plaintiff against the tortfeasor, but acknowledged that often plaintiffs' counsel will "err on the side of caution" by filing suit. (Pl.'s Mot. for Partial Summ. J. Ex. 12 [Doc. #82-12], at 1-3.) Nevertheless, Defendant did not agree to waive the statute of limitations defense. Plaintiff thereafter filed a civil action against Ms. Corriher on

3

June 30, 2010, because of Plaintiff's counsel's belief that it was a necessary step in order to preserve its UIM claim against Defendant.

The matter proceeded to arbitration, and on January 31, 2011, the arbitration panel determined the overall value of Plaintiff's claim to be $2,500,000. After the award from the arbitration panel, Defendant tendered payment of $900,000 to Plaintiff on February 17, 2011. This payment also contained a release for Plaintiff to sign in order to release all potential claims against Defendant. Defendant subsequently allowed Plaintiff to accept the $900,000 without signing a release and without prejudice on February 25, 2011. On July 5, 2011, the North Carolina Industrial Commission ordered the $900,000 to be distributed in varying amounts to the worker's compensation carrier (Hartford), Plaintiff's attorney, and Plaintiff.

Following the $900,000 payment on the UIM policy, Plaintiff filed this action against Defendant in Superior Court in Rowan County, North Carolina, on February 14, 2012, alleging three separate counts: breach of contract, unfair and deceptive trade practices, and refusal to settle in good faith. Thereafter, Defendant removed the case to the Court based on diversity jurisdiction. After removal, both parties filed Motions for Judgment on the Pleadings [Docs. #21, #28], along with briefs. As a result, this Court granted Defendant's Motion for Judgment on the Pleadings [Doc. #21] and ordered that Plaintiff's breach of contract claim be dismissed. (Mem. Op. and Order [Doc. #51].) The Court also granted Plaintiff's Motion to Strike Defendant's affirmative defenses of accord and satisfaction, statute of limitations, laches, failure to cooperate, contract defenses, arbitration and award, and unclean hands. Id. In addition, the Court dismissed Defendant's assertion of the

4

affirmative defense of advice of counsel as to Plaintiff's unfair or deceptive trade practices claim. Id.

Upon completion of discovery, the parties each filed a Motion for Partial Summary Judgment [Docs. #82, #107]. In a Memorandum Opinion and Order [Doc. #174], the Court granted Defendant's Motion for Partial Summary Judgment [Doc. #107] as to whether Plaintiff could include the policy limit payment by Defendant as part of his actual injury in a claim under the Unfair or Deceptive Trade Practices Act ("UDTPA"), N.C. General Statute § 75-1.1, and denied the remainder of Defendant's Motion. (Mem. Op. and Order [Doc. #174], at 40-41.) In the same Memorandum Opinion and Order [Doc. #174], the Court granted Plaintiff's Motion for Partial Summary Judgment [Doc. #82] as to Defendant's failure to reasonably explain its settlement offer constituting an unfair or deceptive trade practice under the UDTPA. Id. at 40. However, the Court denied the remainder of Plaintiff's Motion, and in particular, denied Plaintiff's claim that Defendant violated the UDTPA based on a violation of N.C. General Statute § 58-63-15(11)(g) (compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured). Id. This particular denial is the subject of Plaintiff's Motion for Reconsideration [Doc. #176], filed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. (Pl.'s Mot. for Reconsid. [Doc. #176], at 1-3 (referencing Mem. Op. and Order [Doc. #174], at 21).) On October 23, 2013, Defendant filed a Response in Opposition to the Motion for Reconsideration [Doc. #178], to which Plaintiff submitted a Reply [Doc. #179] on October 24, 2013.

II. LEGAL STANDARD

Motions for reconsideration of partial summary judgments are interlocutory in nature, and are therefore governed by Federal Rule of Civil Procedure 54(b). American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003). Rule 54(b) states, "any order or other decision . . . that adjudicates fewer than all the claims or [all the parties'] rights and liabilities . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Motions for reconsideration of partial summary judgment under Rule 54(b) are not subject to the strict standards applicable to motions for reconsideration of a final judgment. American Canoe Ass'n, 326 F.3d at 515. Instead, they are at the discretion of the court. Id.

Furthermore, this Court, sitting in diversity, is obliged to apply the substantive law of the state in which it sits. Volvo Const. Equip. North Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 599-600 (4th Cir. 2004) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 79, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). Thus, the Court will apply North Carolina substantive law in evaluating Plaintiff's Motion for Reconsideration [Doc. #176].

III. DISCUSSION

Plaintiff contends that the Court's denial of Plaintiff's Motion for Partial Summary Judgment [Doc. #82] for violation of the UDTPA, predicated on a violation of N.C. General Statute § 58-63-15(11)(g), "rests on a clear error of law." (Pl.'s Mem. in Support of Pl.'s Motion for Reconsideration [Doc. #177], at 1.) North Carolina courts have held that violations of N.C. General Statute § 58-63-15(11) constitute an unfair or deceptive trade

6

practice under the UDTPA as a matter of law. Gray v. North Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000); ("[C]onduct that violates subsection (f) of N.C.G.S. § 58–63–15(11) constitutes a violation of N.C.G.S. § 75–1.1, as a matter of law[.]"); Country Club of Johnston Cnty, Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002) (extending the holding in Gray to all conduct described in § 58-63-15(11)). N.C. General Statute § 58-63-15(11)(g) enumerates one such violation: "[c]ompelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured." N.C. Gen. Stat. § 58-63-15(11)(g) (2011). Plaintiff asserts that, in order to proceed in a UIM action against Defendant, he was compelled to initiate litigation against Defendant, because North Carolina law required him to file suit against the tortfeasor by July 2010 (within the three-year statute of limitations for the underlying tort action). Id. at 3-4. Plaintiff contends he was required to file suit against the tortfeasor, despite the fact that he also acknowledges that he "settled his claim" against the tortfeasor by accepting the full liability policy limits from Nationwide and by executing a covenant not to enforce judgment against the tortfeasor well before the three-year statute of limitations ran for the underlying tort action. (Am. Compl. [Doc. #18] ¶ 9.)

Specifically, Plaintiff contends that "[a] party who seeks to recover UIM benefits faces two distinct statute-of-limitations deadlines"—namely, that (1) "the claimant must sue the tortfeasor within the applicable tort statute of limitations," and (2) "the claimant must sue the UIM carrier within three years of the date the tortfeasor's liability insurer tenders its limits." (Pl.'s Mem. in Support of Pl.'s Motion for Reconsideration [Doc. #177], at 3.)

7

While Plaintiff is correct that there are two critical statute-of-limitations deadlines before which a UIM plaintiff must act in order to prevail in an action against a UIM carrier defendant, Plaintiff's explanation of the first deadline as a requirement that "the claimant must sue the tortfeasor within the applicable tort statute of limitations" is incomplete. The first statute-of-limitations requirement is what North Carolina statutes and case law refer to as "exhaustion," and the second statute-of-limitations requirement is that governing the UIM claim itself. See Register v. White, 358 N.C. 691, 698, 599 S.E.2d 549, 555 (2004).

It is clear that the exhaustion requirement is a prerequisite to obtaining UIM coverage. Id. ("Once this requirement is satisfied, but not before, an insured may seek UIM benefits from a UIM carrier."). Exhaustion in a single liability claim under North Carolina law occurs when "the limits of liability per claim have been paid upon the claim." N.C. Gen. Stat. § 20-279.21(b)(4). As Plaintiff suggests, exhaustion may be accomplished by filing a lawsuit before the tort statute of limitations runs and obtaining a judgment against the tortfeasor. Id. However, Plaintiff is mistaken in assuming that a suit against the tortfeasor is the *only* way to satisfy this prerequisite to obtaining UIM coverage. Indeed, the North Carolina legislature made the two methods of exhaustion explicit in the statute governing UIM coverage:

> Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment *or settlement*, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted.

N.C. Gen. Stat. § 20-279.21(b)(4) (emphasis added). Furthermore, in Register v. White, the North Carolina Supreme Court clearly states that the exhaustion requirement may be satisfied by *either* the liability carrier tendering the limits of its policy in a settlement offer *or*

8

in satisfaction of a judgment. Id. ("Exhaustion occurs when the liability carrier has tendered the limits of its policy in a settlement offer or in satisfaction of a judgment.").

In support of Plaintiff's contention that the filing of a lawsuit against the tortfeasor is a prerequisite to obtaining UIM coverage, he quotes dicta[1] from the North Carolina Court of Appeals in Liberty Mutual Insurance Company v. Pennington, 141 N.C. App. 495, 541 S.E.2d 503 (2000), aff'd, 356 N.C. 571, 573 S.E.2d 118 (2002). (Pl.'s Mem. in Support of Pl.'s Motion for Reconsideration [Doc. #177], at 3-4 (quoting Pennington, 141 N.C. App. at 499, 541 S.E.2d at 506).) However, the issues before the Pennington court were related to statute-of-limitations questions as to notice.[2] Specifically, the passage Plaintiff quotes serves to clarify the distinction between the way the underlying tort statute of limitations applies to

---

[1] A more complete quotation is provided for context:

> It follows that subsection (b)(4) does not require that an underinsured motorist carrier be notified of a claim within the statute of limitations governing the tortfeasor.
>
> Nonetheless, it should be noted that an insured would, for instance, be barred from seeking coverage if she failed to bring an action against a tortfeasor within the statute of limitations governing tort actions. An underinsured motorist carrier's liability is derivative of the tortfeasor's liability. See, e.g., Buchanan v. Buchanan, 83 N.C. App. 428, 429, 350 S.E.2d 175, 176 (1986). It follows that an insured may not recover from her underinsured motorist carrier when the statute of limitations bars her from recovering from the tortfeasor.
>
> In sum, while the statute of limitations would serve to bar underinsured motorist coverage when the insured fails to bring a timely claim against a tortfeasor, the statute of limitations for tort claims generally does not impact the notification provisions of N.C. Gen. Stat. § 20–279.21(b)(4).

Pennington, 141 N.C. App. at 499, 541 S.E.2d at 506.

[2] The issues before the Pennington court were: (1) "whether the statute of limitations controlling the underlying tort action governs the time within which an insured must **notify** her underinsured motorist carrier of a potential claim" and (2) "whether the [plaintiffs'] claim is otherwise barred by their failure to notify [the UIM carrier] in a timely manner." Pennington, 141 N.C. App. at 497, 499, 541 S.E.2d at 505-06, 507 (emphasis added).

9

when notice must be provided to a UIM carrier versus the way the underlying tort statute of limitations applies to a UIM carrier's liability. Thus, whereas N.C. General Statute § 20-279.21(b)(4) does not require that a UIM carrier receive notice of a claim within the underlying tort statute of limitations, it does require that a UIM plaintiff either settle with or initiate legal proceedings against the tortfeasor before the underlying tort statute of limitations runs. See Pennington, 141 N.C. App. at 498-99, 541 S.E.2d at 506. Pennington does not provide any reason why settlement with the tortfeasor does not also satisfy the statute of limitations requirement with respect to the tortfeasor as it relates to the exhaustion requirement. Indeed, in Pennington, the plaintiffs obtained a settlement *after* they filed suit against the tortfeasor. Id. at 497, 541 S.E.2d at 505. Therefore, as the Pennington court was not addressing the same issue Plaintiff raises in his Motion to Reconsider [Doc. #176], the court did not need to discuss all the potential different ways that a plaintiff could avoid a statute of limitations problem with respect to the effect of the underlying tort statute of limitations on the UIM claim. Plaintiff failed to provide any additional legal support for his contention that this Court's ruling on this issue was clearly erroneous other than the dicta quoted from Pennington.

Defendant responds that the Court should deny Plaintiff's Motion for Reconsideration [Doc. #176] because there are genuine disputes of material fact and because suit was unnecessary after Plaintiff submitted his formal demand for arbitration of his UIM claim. (Def.'s Resp. [Doc. #178], at 4-8.) However, a more appropriate basis for denying Plaintiff's Motion for Reconsideration [Doc. #176] is found in Wilmoth v. State Farm Mutual Automobile Insurance Company, a case that directly addresses Plaintiff's contention.

10

127 N.C. App. 260, 263, 488 S.E.2d 628, 631 ("[T]he question before us is whether an action against the UIM carrier is barred by *settlement* with the tortfeasor *without suit* and within the statutory period." (emphasis in original and added)). The Wilmoth plaintiffs settled with the tortfeasor without ever filing suit against the tortfeasor. Id. at 261, 488 S.E.2d at 630. The Wilmoth UIM carrier argued that because the plaintiffs never sued the tortfeasor, they were therefore barred from pursuing an action against the UIM carrier for UIM coverage under their policies. Id. at 262, 488 S.E.2d at 630. The North Carolina Court of Appeals disagreed, noting that N.C. General Statute § 20-279.21(b)(4) does not identify any distinction between settlements that occur after filing suit or those that occur prior to, or without plaintiff ever, filing suit. Id. at 264-65, 488 S.E.2d at 632. The Wilmoth court elaborates, stating that "such distinction would encourage the filing of litigation[,] even when the parties have agreed to a settlement." Id. at 265, 488 S.E.2d at 632. The Wilmoth court therefore held that "[o]ur General Assembly, cognizant of the crushing burden of heavy caseloads placed upon our courts and the resultant operating costs, could not have intended such an absurd result, and we decline to impose it." Id. (internal citations omitted) (citing Nationwide Mut. Ins. Co. v. Chantos, 293 N.C. 431, 440, 238 S.E.2d 597, 603 (1977) and Sutton v. Aetna Casualty & Surety Co., 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989)). As a result, the Wilmoth court concluded that the mere fact that the insured settled with the tortfeasor without ever filing suit against the tortfeasor does not bar a plaintiff's UIM claim. Id.

Therefore, Plaintiff's argument that he was required to file suit against the tortfeasor, despite his settlement with the tortfeasor prior to the statute of limitations running on the

11

tort action, is incorrect. In light of Plaintiff's timely settlement, Plaintiff satisfied the exhaustion requirement and did not have to sue the tortfeasor in order to preserve his rights to UIM coverage. Thus, despite Plaintiff's contention to the contrary, Plaintiff was not compelled by Defendant to file a lawsuit in June 2010. Therefore, Plaintiff's Motion to Reconsider [Doc. #176] this holding in the Court's Memorandum Opinion and Order [Doc. #174] is denied.

IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Reconsideration [Doc. #176] is DENIED.

This, the 30 day of October, 2013.

*United States District Judge*